# Nos. 13-1626, 13-2179

## United States Court of Appeals for the First Circuit

---

ANGIODYNAMICS, INC.,

Plaintiff-Appellee

v.

BIOLITEC AG, BIOMED TECHNOLOGY
HOLDINGS, LTD., and WOLFGANG NEUBERGER,

Defendants-Appellants.

---

Appeal from the United States District Court for the District of Massachusetts

# APPELLEE'S BRIEF

BOND, SCHOENECK & KING, PLLC

William E. Reynolds
First Circuit Bar No. 83366
111 Washington Ave.
Albany, NY 12210
Telephone:  (518) 533-3000
wreynolds@bsk.com
Counsel for Plaintiff-Appellee
    AngioDynamics, Inc.

318279.1 3/15/2014

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellee AngioDynamics, Inc., a publicly traded, non-governmental party, states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock. Avista Capital Partners, a privately-held entity, owns 27% of AngioDynamics's stock.

Dated: March 17, 2014

_____ s/ William E. Reynolds _____
William E. Reynolds
First Circuit Bar No. 83366
Bond, Schoeneck & King, PLLC
Counsel for AngioDynamics, Inc.
111 Washington Ave.
Albany, NY 12210
Telephone: (518) 533-3000
Facsimile: (518) 533-3299
wreynolds@bsk.com

296865.2 3/15/2014

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iv

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ........................... x

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUES ............................................................. 2

STATEMENT OF THE CASE ................................................................ 3

RELEVANT FACTS AND PROCEDURAL HISTORY ...................................... 6

    Evasion of Service ................................................................... 6

    Defendants Conceive the Downstream Merger .................................. 6

    The Temporary Restraining Order ................................................ 7

    The Preliminary Injunction ......................................................... 8

    Defendants' Attempts to Reconsider, Modify, and Overturn the Injunction ........ 9

    Defendants' Reassurances that They Would Not Complete the Merger ............ 10

    Defendants Carried out the Merger ............................................... 11

    Defendants Repeatedly Said the Purpose of the Merger Was to Relocate
    BAG's Corporate Domicile, and Acknowledged That the Injunction
    Barred Them from Moving the Domicile ......................................... 12

    Motion for Contempt ............................................................... 14

    This Court's Expedited Affirmance of the Preliminary Injunction .............. 14

    The April 3 Contempt Hearing .................................................... 15

    Defendants Admitted they Had Violated the Injunction ......................... 17

    Defendants Conceded They Could Effectively Undo the Merger ............... 18

    Neuberger's Failure to Appear at the Show Cause Hearing ..................... 19

    April 10 Show Cause Hearing ..................................................... 19

    The April 11 Contempt Order ...................................................... 21

    Defendants Refused to Pay Any of the Fines and Took No Steps to
    Restore the Status Quo Ante, and Neuberger Remains a Fugitive .............. 22

    Defendants' Motions for Relief from the Contempt Order ...................... 23

    The District Court Denied Defendants' Post-Contempt Motions ................ 23

    Defendants' Confirmation That They Will Take No Steps to Comply with
    the Contempt Order or Return to Compliance with the Injunction .............. 25

i

The District Court's Entry of Default Judgment Based on Defendants' Discovery Abuses ...................................................................................25

STANDARD OF REVIEW ...............................................................................26

SUMMARY OF ARGUMENT ..........................................................................27

ARGUMENT ......................................................................................................29

   I.   DEFENDANTS DO NOT DISPUTE THAT THE FOUR ELEMENTS OF CIVIL CONTEMPT ARE MET IN THIS CASE ..........29

   II.   THE SANCTIONS THE DISTRICT COURT ENTERED WERE ENTIRELY PROPER AND APPROPRIATE ...........................................30

        A.  Arrest Warrants and Periodic Fines, to Be Lifted When the Contempt Is Purged, Are the Paradigmatic Coercive Civil Contempt Sanctions............................................................................30

           i.  Defendants Explicitly Conceded that Neuberger's Failure to Appear at the Show Cause Hearing Justified the Issuance of an Arrest Warrant ...................................................................32

        B.  The District Court Made Absolutely Clear that Its Sanctions Would Be Lifted As Soon As Defendants Restored, or Even Began to Restore, the Status Quo Ante .................................33

        C.  Defendants Admitted They Could Restore the Status Quo Ante........35

        D.  The District Court Repeatedly Made Clear That It Would Consider any Plan Defendants Proposed to Restore the Status Quo Ante .............................................................................37

        E.  Coercing a Contemnor to Restore the Status Quo Ante Is an Appropriate and Common Civil Contempt Sanction..........................38

        F.  The District Court Correctly Considered the Severe Harm to AngioDynamics in Fashioning Its Sanctions ......................................42

           i.  Defendants' Claim that AngioDynamics Was Not Harmed by the Merger Is Based Entirely on a One-Sentence, Unsupported, Self-Serving, Conclusory Assertion That Lacks Any Credibility ...................................................................45

           ii.  The District Court Properly Exercised Its Discretion in Excluding the Gebhart Testimony, Which Only Would Have

318308.2 3/17/2014

     Repeated Meritless Arguments the Courts Had Already
     Rejected ........................................................................................47

II.  DEFENDANTS' APPEAL SHOULD BE DISMISSED UNDER
    THE FUGITIVE DISENTITLEMENT DOCTRINE ..................................48

III. DEFENDANTS' POST-CONTEMPT MOTION TO VACATE THE
     PRELIMINARY  INJUNCTION WAS AN IMPROPER AND
     MERITLESS COLLATERAL ATTACK ..................................................52

    A. The Motion to Vacate Was an Improper Collateral Attack ...............52

    B. The Motion Lacked Any Substantive Merit........................................53

IV. NEUBERGER AND BIOMED WERE PROPERLY SERVED
     WITH PROCESS ..........................................................................56

CONCLUSION ...................................................................................60

318308.2 3/17/2014

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allegheny Bradford Corp. v. United States*,
   342 F. Supp. 2d 1162 (Ct. Int'l Trade 2004) ......................................40

*AngioDynamics, Inc. v. Biolitec AG*,
   711 F.3d 248 (1st Cir. 2013)................................................................3

*AngioDynamics, Inc. v. Biolitec AG*,
   910 F. Supp. 2d 346 (D. Mass. 2012)...................................................9

*AngioDynamics, Inc. v. Biolitec, Inc.*,
   2011 U.S. Dist. LEXIS 80734 (D. Mass. July 25, 2011) ....................6

*Bower v. El-Nady*,
   844 F. Supp. 2d 191 (D. Mass. 2012)..................................................59

*Canon U.S.A., Inc. v. Lease Group Res., Inc.*,
   2005 U.S. Dist. LEXIS 7452 (E.D. Va. Apr. 19, 2005) ....................39

*Central States, Southeast & Southwest Areas Pension v. Jansen*,
   1991 U.S. App. LEXIS 11094 (7th Cir. May 22, 1991)....................43

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)..............................................................................31

*Comfort v. Lynn Sch. Comm.*,
   560 F.3d 22 (1st Cir. 2009)................................................................53

*Empire Blue Cross and Blue Shield v. Finkelstein*,
   111 F.3d 278 (2d Cir. 1997) ..............................................................48

*Equinox Software Sys. v. Airgas, Inc.*,
   1997 U.S. Dist. LEXIS 119 (E.D. Pa. Jan. 7, 1997)..........................39

*Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*,
   692 F.2d 790 (1st Cir. 1982) ..............................................................36

*Fowler v. Huber*,
   437 F.2d 1117 (5th Cir. 1971) ...........................................................40

*FTC v. Leshin*,
    618 F.3d 1221 (11th Cir. 2010) ..........................................................39

*FTC v. Weyerhaeuser Co.*,
    665 F.2d 1072 (D.C. Cir. 1981)...........................................................41

*G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*,
    639 F.2d 29 (1st Cir. 1980).......................................................26, 31, 52

*Gompers v. Bucks Stove & Range Co.*,
    221 U.S. 418 (1911) .........................................................................31

*Goya Foods, Inc. v. Unanue-Casal*,
    275 F.3d 124 (1st Cir. 2001)......................................................... 50-51

*Goya Foods, Inc. v. Wallack Mgmt. Co.*,
    290 F.3d 63 (1st Cir. 2002).........................................................*passim*

*Halderman v. Pennhurst State Sch. & Hosp.*,
    673 F.2d 628 (3d Cir. 1982) ..............................................................38

*Hartman v. Lyng*,
    884 F.2d 1103 (8th Cir. 1989) ...........................................................38

*Hawkins v. HHS*,
    665 F.3d 25 (1st Cir. 2012)................................................................29

*Hicks v. Feiock*,
    485 U.S. 624 (1988)..........................................................................36

*Hutto v. Finney*,
    437 U.S. 678 (1978) .........................................................................31

*Igloo Prods. Corp. v. Thai Welltex Int'l Co.*,
    379 F. Supp. 2d 18 (D. Mass. 2005).....................................................59

*In re C. W. Mining Co.*,
    625 F.3d 1240 (10th Cir. 2010) ..........................................................39

*In re Federal Facilities Realty Trust*,
    227 F.2d 651 (7th Cir. 1955) .............................................................39

*In re Grand Jury Proceeding*,
  13 F.3d 459 (1st Cir. 1994)..................................................................26

*In re Haddad*,
  68 B.R. 944 (Bankr. D. Mass. 1987) ...................................................40

*In re Herbert*,
  1998 Bankr. LEXIS 617 (B.A.P. 9th Cir. 1998) ..................................40

*In re Kave*,
  760 F.2d 343 (1st Cir. 1985)......................................................... 30-31

*In re LaFata*,
  483 F.3d 13 (1st Cir. 2007)...................................................................53

*In re Naudain, Inc.*,
  32 B.R. 880 (Bankr. E.D. Pa. 1983) ....................................................40

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
  208 F. Supp. 2d 387 (E.D.N.Y. 2002)...........................................43, 46

*Int'l Union v. Bagwell*,
  512 U.S. 821 (1994)................................................................31, 33

*Karak v. Bursaw Oil Corp.*,
  288 F.3d 15 (1st Cir. 2002)...................................................................27

*Maggio v. Zeitz,*
  333 U.S. 56 (1948) ...............................................................36, 43

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949) ............................................................................38

*Molinaro v. New Jersey*,
  396 U.S. 365 (1970) ............................................................................48

*Orsi v. Sheik Falah Bin Zayed Bin Sultan Al-Nahyan*,
  2012 U.S. Dist. LEXIS 136798 (D. Mass. Sept. 25, 2012)................59

*Ortega-Rodriguez v. United States*,
  507 U.S. 234 (1993) ............................................................................48

318308.2 3/17/2014

*Paul Revere Variable Annuity Ins. Co. v. Zang*,
   248 F.3d 1 (1st Cir. 2001) ...................................................................53

*Project B.A.S.I.C. v. Kemp*,
   947 F.2d 11 (1st Cir. 1991) ................................................................26

*RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*,
   718 F.3d 1308 (11th Cir. 2013) ..........................................................32

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................59

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980) ...........................................................................31

*Robin Woods Inc. v. Woods*,
   28 F.3d 396 (3d Cir. 1994) .................................................................40

*Ross v. Bank South, N.A.*,
   885 F.2d 723 (11th Cir. 1989) ............................................................39

*Russell Brands, LLC v. GVD Int'l Trading, SA*,
   282 F.R.D. 21 (D. Mass. 2012).............................................................59

*Satyam Computer Servs. v. Venture Global Eng'g, LLC*,
   2008 U.S. Dist. LEXIS 3906 ( E.D. Mich. Jan. 17, 2008) ..................39

*SEC v. AmeriFirst Funding, Inc.*,
   2008 U.S. Dist. LEXIS 7510 (N.D. Tex. Feb. 1, 2008) ......................39

*SEC v. First Choice Mgmt. Servs.*,
   709 F.3d 685 (7th Cir. 2013) ..............................................................39

*SEC v. Northshore Asset Mgmt., LLC*,
   2006 U.S. Dist. LEXIS 39255 (S.D.N.Y. June 14, 2006) ...................41

*Ungar v. PLO*,
   599 F.3d 79 (1st Cir. 2010)..................................................................27

*United States v. 6 Fox St.*,
   480 F.3d 38 (1st Cir. 2007)..................................................................53

318308.2 3/17/2014

*United States v. Barnette*,
129 F.3d 1179 (11th Cir. 1997) .............................................................48, 49, 50

*United States v. Dinwiddie*,
885 F. Supp. 1299 (W.D. Mo. 1995) ..................................................41

*United States v. Marquardo*,
149 F.3d 36 (1st Cir. 1998) ..................................................................31

*United States v. Melick*,
2012 U.S. App. LEXIS 26829 (1st Cir. 2012) ..................................48

*United States v. Paccione*,
975 F. Supp. 537 (S.D.N.Y. 1997) ....................................................43

*United States v. Professional Air Traffic Controllers Organization
(PATCO)*,
678 F.2d 1 (1st Cir. 1982) ...................................................................31

*United States v. Puerto Rico*,
642 F.3d 103 (1st Cir. 2011) ...............................................................36

*United States v. Ryan*,
402 U.S. 530 (1971) .............................................................................52

*United States v. Rylander*,
460 U.S. 752 (1983) .............................................................................43

*United States v. Saccoccia*,
433 F.3d 19 (1st Cir. 2005) .................................................................26

*United States v. Smith*,
1991 U.S. App. LEXIS 13663 (9th Cir. June 24, 1991) ..................32

*Walsh v. Walsh*,
221 F.3d 204 (1st Cir. 2000) ...............................................................49

*Western Water Management v. Brown*,
40 F.3d 105 (5th Cir. 1994) ................................................................52

*Yash Raj Films, Inc. v. Bobby Music Co. & Sporting Goods, Inc.*,
2006 U.S. Dist. LEXIS 96376 (E.D.N.Y. July 5, 2006) ..................41

318308.2 3/17/2014

**Other Authorities**

Fed. R. Civ. P. 4(f)(3) ......................................................................6, 57, 58

Fed. R. Civ. P. 60(b) ..........................................................................*passim*

Wright, Miller & Kane, *Federal Practice and Procedure* (2013 ed.)....................52

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

AngioDynamics believes that oral argument may assist the Court in analyzing the issues presented on this appeal and the reasons why the District Court's rulings were correct.

# JURISDICTIONAL STATEMENT

Defendants-Appellants Biolitec AG (BAG), Biomed Technology Holdings, Ltd. (Biomed), and Wolfgang Neuberger (collectively "defendants")[1] have not asserted a proper basis for appellate jurisdiction over their interlocutory appeal from the contempt rulings of the District Court.  Defendants offer two bases for jurisdiction: (1) they claim to be appealing the grant of a new injunction; and (2) they claim the contempt order imposes criminal contempt sanctions.  *See* Defendants' February 10, 2014 Brief ("Brief") at 1.  In fact, as discussed in this brief, the contempt order does not constitute a new, or modified, injunction; instead, it simply and properly seeks to coerce compliance with the District Court's existing preliminary injunction, which this Court already affirmed on April 1, 2013.   The contempt order also does not impose criminal contempt sanctions; it imposes the paradigmatic conditional, coercive *civil* contempt sanctions – an arrest warrant and periodic fines.  The District Court referred the issue of criminal contempt to the United States Attorney for separate consideration of a potential prosecution, and there is no prosecutorial action at issue on this appeal.  *See* Brief at 20.

---

[1] The term "defendants," as used in this brief, does not refer to Biolitec, Inc. (BI), which filed for Chapter 11 bankruptcy on January 22, 2013 and is not a party to this appeal.

## STATEMENT OF THE ISSUES

1. Where it is undisputed that (a) defendants had notice of the District Court's September 13, 2012 preliminary injunction, (b) the injunction clearly and unambiguously forbid the completion of BAG's downstream merger, (c) defendants could have complied simply by not proceeding with the merger, and (d) defendants admitted they "violated the preliminary injunction by completing the merger and it's absolutely clear that the preliminary injunction said do not complete the merger," did the District Court properly exercise its discretion by finding the defendants in civil contempt?

2. Did the District Court properly exercise its discretion by imposing conditional, periodic fines and a conditional arrest warrant, where those are the paradigmatic civil contempt sanctions, the Court repeatedly promised to revoke or reconsider the sanctions if defendants took any substantial steps to restore the status quo existing prior to their violation of the injunction, and defendants admitted that effectively restoring the status quo ante was possible?

3. Did the District Court correctly reject defendants' post-hoc claim that the merger did not harm AngioDynamics, where this Court had already affirmed the injunction, including the District Court's finding of irreparable harm, and where defendants' argument was based entirely on an unsupported one-sentence conclusory assertion regarding the purported non-removal of assets?

2

4.      Should defendants' fugitive status bar them from proceeding with this appeal, where they have utterly disregarded the underlying preliminary injunction, the order for Neuberger to appear at a show cause hearing, the warrant for Neuberger's arrest, and the coercive fines imposed by the District Court; and where it is abundantly clear that defendants will not abide an adverse decision by this Court?

5.      Did the District Court correctly reject defendants' collateral attack on the injunction based on purported evidence regarding the location of BI's stock certificates, when defendants failed to present such evidence in the underlying litigation of the injunction, and when the "new" evidence harmed defendants' position in any event?

6.      Did the District Court correctly exercise its discretion by ordering substituted service on Neuberger and Biomed, when the record showed their deliberate evasion, and AngioDynamics had made numerous costly service attempts in multiple countries?

## STATEMENT OF THE CASE

In its April 1, 2013 opinion[2] affirming the preliminary injunction, this Court summarized the background of this case as follows:

---

[2] *AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248 (1st Cir. 2013).

318308.2 3/17/2014

> BI, which is a U.S.-based BAG subsidiary, sold medical equipment to plaintiff AngioDynamics, Inc. ("ADI"), and agreed to indemnify ADI for any patent infringement claims. . . . In a separate lawsuit in New York, ADI obtained a $23 million judgment (including interest) against BI under the indemnification clause.  Attempting to secure payment on that judgment, ADI sued defendants in this case . . . .  ADI alleged that BAG looted BI of more than $18 million to render BI judgment-proof and to move BI's assets beyond reach.
>
> On August 29, 2012, the district court granted ADI a temporary restraining order which, among other things, barred defendants from "carry[ing] out the proposed 'downstream merger' of Biolitec AG with its Austrian subsidiary" and from "transfer[ring] any ownership interest [they] hold[] in any other defendant."  ADI alleged that the merger would place the company's assets out of its reach, as American judgments are unenforceable in Austria.  Following the merger, the Austrian company would hold all assets and liabilities previously held by BAG.  On September 13, 2012, the court issued a preliminary injunction with the same terms as the [TRO].

Record Appendix ("RA-") 845-846.

BAG was a German corporation from its inception in approximately 2000 until it completed the downstream merger in March 2013.  RA-627.  BAG has numerous subsidiaries around the world.  RA-917.  Biomed (a Malaysian entity) owns approximately 75% of BAG.  RA-114.  Neuberger is the sole owner of Biomed and the chief executive officer of BAG (RA-626) and is, in the District Court's words, "an international businessman who apparently maintains multiple residences in various countries throughout the world."  RA-525.  BI, a

4

Massachusetts-based company, filed for bankruptcy in January 2013 as a result of

AngioDynamics's judgment against it.  *See* Brief at 1 n.1.

This Court held in its April 2013 opinion that AngioDynamics

> presented substantial evidence that under Massachusetts
> law, BI fraudulently conveyed $18 million of its assets to
> BAG . . . . and that in the absence of injunctive relief
> there was a strong likelihood ADI would not be able to
> collect on its judgment.  The court's injunction was
> narrowly tailored to protect ADI's interest . . .

RA-847.  This Court concluded that the District Court "supportably found that ADI

had demonstrated a likelihood of success on" the merits.  RA-848.  In this Court's

words, "the evidence demonstrated" that defendants had moved assets to shield

them from creditors.  RA-849.

The subject of this appeal is BAG's deliberate completion of the

downstream merger on March 15, 2013 – in this Court's words, defendants'

"violat[ion of] a preliminary injunction which had previously been upheld by this

court."  Appellee's Addendum ("Addendum") at 1.  The District Court imposed

civil contempt sanctions – periodic fines and an arrest warrant for defendant

Neuberger – in an effort to coerce defendants to return to compliance with the

injunction by restoring the status quo ante.   Even though they have simply

disregarded those sanctions – Neuberger has been a fugitive for nearly a year and

defendants have not paid a penny of the fines – defendants nevertheless appeal

from them.

318308.2 3/17/2014

## RELEVANT FACTS AND PROCEDURAL HISTORY

**Evasion of Service**

In May 2011, the District Court found that "[d]espite diligent efforts and substantial expense" (RA-525), AngioDynamics was frustrated in its efforts to serve Neuberger and Biomed:

> The record demonstrates, overwhelmingly and in detail, that Plaintiff's difficulties with service of process arise from the evasive conduct of Defendant Neuberger and, to some extent, from the possibly inadvertent but nevertheless misleading statements made by his counsel.

RA-526. The District Court found that

> it does appear that Mr. Neuberger has been playing cat and mouse with the plaintiff, and he's aware that he's being sued and he's avoiding service.

RA-541.

Stating that it did not want to continue defendants' game of "penny, penny, who's got the penny," (RA-541), on May 17, 2011, the District Court allowed substituted service under Rule 4(f)(3) via email and through defense counsel. RA-526.

**Defendants Conceive the Downstream Merger**

In the fall of 2011, after the District Court denied BAG's motion to dismiss,[3] defendants began working on a plan under which BAG would merge into an

---

[3] *See AngioDynamics, Inc. v. Biolitec, Inc.*, 2011 U.S. Dist. LEXIS 80734 (D. Mass. July 25, 2011).

318308.2 3/17/2014

Austrian subsidiary and thereby move its "corporate domicile" to Austria (*see* Addendum at 4), where, as this Court noted, "American judgments are unenforceable." RA-846. A former executive within the Biolitec group, Stefan Spaniol, submitted a declaration "confirming that Neuberger's intent in pushing forward with the merger, conveyed to Spaniol explicitly, was specifically to make enforcement of any judgment against BAG difficult if not impossible." RA-1180.

**The Temporary Restraining Order**

In August 2012, AngioDynamics learned of Neuberger's plan to move BAG out of reach through the downstream merger. RA-719. On August 21, 2012, AngioDynamics filed its motion for TRO in the District Court. RA-1116.

The District Court issued the TRO on August 29, 2012, the day before the scheduled BAG shareholder vote to approve the merger. RA-23. On the evening of August 29, defendants filed an emergency motion in this Court to vacate the TRO, stating that it "restrains a corporate shareholder meeting scheduled to occur at 4:30 a.m., August 30, 2012, Eastern Standard Time." Addendum at 6. This Court denied the motion to vacate later that same evening. Addendum at 7. Nevertheless, defendants went forward with the shareholders' vote the following day. As the District Court noted:

> The convening of the shareholders' meeting and the vote
> in favor of the merger, in the teeth of the preliminary
> injunction, raised troubling questions about Defendants'

7

> good faith.  Their argument in opposition to the issuance
> of the preliminary injunction was anchored on their
> contention that the injunction would bar the meeting and
> vote, yet they immediately proceeded with the vote right
> after the injunction issued.

RA-721.

At the September 13, 2012 preliminary injunction hearing, in the District

Court's words, defendants "[r]eassured" the Court "that the vote . . . did not,

technically, effectuate the merger, and that Defendants still intended to hold off on

the merger out of respect for the injunction."  RA-721-722.

**The Preliminary Injunction**

On September 13, 2012, the District Court converted the TRO into a

preliminary injunction that stated:

> Plaintiff faces irreparable harm if defendants are not
> restrained from moving defendant Biolitec AG to
> Austria, where a judgment of this Court will not be
> recognized . . . .
>
> Therefore, this Court hereby ORDERS as follows:
>
> Defendants shall not carry out the proposed "downstream
> merger" of Biolitec AG with its Austrian subsidiary;
>
> No defendant shall alienate, exchange, dispose of, sell,
> dissipate, encumber, or otherwise transfer any ownership
> interest it holds in any other defendant during the
> duration of this Order . . .

8

RA-589-590.  Near the end of the September 13, 2012 hearing, the District Court stated in court to defendants' counsel: "I have decided that the merger should not take place, and I expect that that order will be adhered to."  Addendum at 18.

**Defendants' Attempts to Reconsider, Modify, and Overturn the Injunction**

Defendants made the following unsuccessful attempts to lift the order barring the merger:

- They moved for reconsideration on September 18, 2012 (RA-26); the District Court denied that motion on December 14, 2012 at *AngioDynamics, Inc. v. Biolitec AG*, 910 F. Supp. 2d 346 (D. Mass. 2012).

- Defendants then appealed to this Court.  On January 14, 2013, they moved under FRAP 8(a) to modify the injunction "to allow Biolitec AG's downstream merger to be completed."  Addendum at 8.  On February 4, 2013, this Court denied that motion.   Addendum at 10.

- On February 12, 2013, defendants moved in the District Court under FRCP 60(b) to vacate the injunction.  RA-31.  The District Court denied that motion on February 25, 2013.  RA-32.

- On April 1, 2013, this Court affirmed the preliminary injunction, finding defendants' appeal to be "without merit."  RA-852.

318308.2 3/17/2014

**Defendants' Reassurances that They Would Not Complete the Merger**

Throughout these unsuccessful attempts to lift the injunction, defendants repeatedly gave assurances that they would keep the merger in abeyance as long as the injunction was in place.

- On September 18, 2012, defendants promised they "would be able to stop the merger from being finalized . . . should th[e] Court deny defendants' motion for reconsideration of the Preliminary Injunction."  Addendum at 11.

- On December 3, 2012, defendants asserted that "in order to comply with the September 13, 2012 Preliminary Injunction" BAG had "not taken the steps necessary to complete the Planned Merger."  Addendum at 12.

- On January 14, 2013, defendants stated that "unless the Preliminary Injunction is lifted by March 1, 2013, the Preliminary Injunction will prevent the Planned Merger from being completed."  Addendum at 13.

- On January 18, 2013, defendants stated that by "retain[ing] full control to stop the merger," they had avoided "violating the terms of the" injunction. Addendum at 5.

- In a January 28, 2013 hearing in BI's bankruptcy case, defendants stated "[w]e're willing to live by whatever the First Circuit says" about the injunction; "[o]f course it's in place now, and we are abiding by it."  RA-1122.

- On February 12, 2013, defendants stated that they had "taken every step possible to delay completion of the current merger process . . . [in case] the Preliminary Injunction is modified or vacated to allow the merger to be completed."  Addendum at 14.

In short, as the District Court noted, "Defendants repeatedly assured the court that they could and would comply with the" injunction.  RA-0726.

**Defendants Carried out the Merger**

On March 15, 2013, defendants notified the court that

> Biolitec AG's downstream merger with its Austrian subsidiary has been completed . . . . The post-merger entity ("Biolitec AG") has assumed all assets and liabilities of the pre-merger German corporation . . . . The merger relocated Biolitec AG's corporate domicile from Germany to Austria.

RA-591-592.  Biomed's shares in BAG were exchanged for shares in the Austrian subsidiary entity ("the new biolitec share[s]," RA-915).

In the District Court's words, "[d]efendants notified the court that, in the teeth of the injunction, they had knowingly and intentionally proceeded with the enjoined merger anyway, and it had been completed."  RA-1168.  After all of their promises to comply with the injunction, defendants

> deliberately did not confer with Plaintiff's counsel or notify the court before . . . flouting the order. . . . Their reason for doing this was manifest: they knew they were violating the order and did not wish to give Plaintiff or

11

> the court notice of their intent. Their contempt was
> knowing, intentional, and brazen.

RA-1177.

**Defendants Repeatedly Said the Purpose of the Merger Was to Relocate BAG's Corporate Domicile, and Acknowledged That the Injunction Barred Them from Moving the Domicile**

Before the merger was completed, defendants specifically said that its

purpose was to move the corporate domicile. *See* March 27, 2012 corporate

statement that BAG "wants to transfer its company domicile to Austria"

(Addendum at 15); January 14, 2013 motion asking this Court "to permit Biolitec

AG to complete its downstream merger and thereby relocate its corporate domicile

to Austria" (Addendum at 9); March 11, 2013 reply brief stating that "Biolitec AG

wants to relocate its corporate domicile from Germany to Austria" (RA-909).

Similarly, defendants repeatedly acknowledged the self-evident fact that the

injunction *barred* relocation of the domicile:

- On September 26, 2012, defendants stated that the injunction "restrains

   defendants from, *inter alia*, completing the planned relocation of the

   corporate domicile of Biolitec AG . . . to Austria." Addendum at 16.

- On January 18, 2013, defendants said that:

   > The injunction . . . *restrains defendant Biolitec AG from*
   > *completing a downstream merger to relocate its*
   > *corporate domicile from Germany to Austria . . . .*

12

> ADI's stated purpose in seeking the injunction, and the
> district court's rationale for issuing it, is *to prevent
> Biolitec AG from completing a downstream merger with
> an Austrian subsidiary that would relocate Biolitec AG's
> corporate domicile to Austria.*

Addendum at 2-3 (emphasis added).

- On January 28, 2013, at a hearing in BI's bankruptcy case, defendants

  stated:

> [T]he *sole reason for the injunction was to prevent
> Biolitec AG* from moving, not assets, but *moving its
> corporate domicile from Germany to Austria.*
> [AngioDynamics was] concerned because it's conceded
> by everyone that US judgments generally are not
> enforceable in Austria. And sometimes they are
> enforceable in Germany.

RA-1116-1117 (emphasis added).

- On February 1, 2013, defendants said it was "undisputed" that "the stated

  purpose of the injunction is to prevent Biolitec AG from relocating its

  corporate domicile from Germany to Austria."  Addendum at 17.

- On March 11, 2013, defendants said that "ADI's true motive for seeking the

  Preliminary Injunction is to . . . prevent[] Biolitec AG from relocating its

  corporate domicile to Austria."  RA-887.

13

318308.2 3/17/2014

**Motion for Contempt**

On March 22, 2013, AngioDynamics moved for civil contempt and asked the District Court to refer the matter for prosecution for criminal contempt. The District Court scheduled a hearing on April 3. RA-34 (Dkt 209).

**This Court's Expedited Affirmance of the Preliminary Injunction**

This Court held oral argument on defendants' appeal of the injunction on April 1, 2013, and issued its per curiam affirmance that afternoon.

This Court held that the District Court did not err "in finding that ADI had demonstrated irreparable harm" and added that "[d]ue to defendants' actions, ADI has been put through hoops and may not be able to collect on its judgment." RA-850.

This Court said:

> The district court noted that defendants' dissembling during the preliminary injunction hearing "raised troubling questions about Defendants' good faith." . . . These questions have become more disquieting in light of defendants' decision to complete BAG's merger on March 15, 2013, notwithstanding the court's preliminary injunction.

RA-846.

This Court noted that defendants had "[m]ischaracteriz[ed] what the district court actually found," and had incorrectly "argue[d] that the court was required to accept the view of its experts on German law." RA-850.

318308.2 3/17/2014

> Defendants argue that ADI would face the same difficulties enforcing its judgment . . . in Germany as in Austria, and make several representations as to German law.  Defendants concede, however, that they have already misrepresented principles of European law once in this litigation, regarding the legal effect of a shareholder vote.

*Id.*

This Court also noted that "delaying the merger would [have] cause[d] only minimal harm to defendants."  RA-852.

**The April 3 Contempt Hearing**

Two days later, the District Court had the following exchange with counsel for the defendants:

> [I]n 30 years I have never had such a quick and emphatic decision out of the Court of Appeals.  I do hope you recognize that.
>
> MR. GRIFFITH: Your Honor, just briefly I would have to say that I agree with that.  It's unprecedented, and in retrospect I think it may have been ill-advised to ask the First Circuit to expedite [its] decision.

RA-633-634.  Later, defense counsel said:

> I recognize that the First Circuit's decision is a clear indication that it was also very unhappy with the conduct of my client in completing this merger. . . .

RA-666.

During the hearing, the District Court said:

> You had a clear order which you acknowledged and I
> was told orally and in writing that you would respect that
> order.
>
> *         *         *
>
> I told [Neuberger], you agreed, that there would be no
> downstream merger.

RA-636, 662.  The District Court ordered Neuberger to appear one week later at a

show cause hearing.

> I want to give him an opportunity to make some
> presentations to me . . . .
>
> *         *         *
>
> I want Mr. Neuberger here one week from today at
> eleven a.m. to testify in person and show cause why he
> shouldn't be held in civil contempt. . . . I expect Mr.
> Neuberger to be here in person. . . .
>
> If Mr. Neuberger is not here that day, I will issue a
> warrant for his arrest.

RA-639, 641.  The District Court made clear that

> the main goal I have is a concern that Dr. Neuberger's
> rights not be violated. . . . I'd like to give him an
> opportunity to come here and tell me his point of view.  I
> think that's perhaps not something he's entitled to. . . .
> but it's certainly something I would feel more
> comfortable giving him a chance to do before I make any
> serious decisions.
>
> *         *         *

318308.2 3/17/2014

> . . . I really do look forward to hearing from Mr.
> Neuberger and listening to what he has to say with an
> open mind . . . .
>
> He is a party. . . . I am ordering him to be here.  There
> will be consequences if he is not here . . . . I look forward
> to hearing what he has to say. . . . .
>
> I'm chiefly interested in hearing from Dr. Neuberger . . . .
>
> I do expect Dr. Neuberger to be here.

RA-645, 649, 686-687.

Defendants explicitly conceded that the District Court had the power to issue

an arrest warrant for Neuberger if he did not appear at the show cause hearing:

> [Y]ou're absolutely right that you would certainly be
> within your authority to issue an arrest warrant if he did
> not comply with your order to come here and testify.

 RA-650.

## Defendants Admitted they Had Violated the Injunction

Defendants admitted at the April 3 hearing that they had violated the

injunction:

> [W]e acknowledge that we violated the text of the order. .
> .
>                 *                 *                 *
>
> We violated the preliminary injunction by completing the
> merger and it's absolutely clear that the preliminary
> injunction said do not complete the merger. . . .
>
> [T]his may be considered a direct contempt in violation
> of the order.

17

                                *             *             *

> [Y]our injunction right now says do not complete the merger.  Well, that has been completed and I understand that you are upset about it.  Frankly if I was in your shoes, I would be upset about it too.

RA-651-654, 664.

### Defendants Conceded They Could Effectively Undo the Merger

At the April 3 hearing, defendants stated that "[y]ou're absolutely right that it may be possible to turn back the clock and to relocate the domicile back to Germany."  RA-664.  Defense counsel said:

> I've discussed this with the client and its advisors and . . . it would basically have to do the same thing that was done to move the domicile to Austria but in reverse.  Namely, a new company would have to be created in Germany as a subsidiary of the new Austrian Biolitec AG; a downstream merger would have to take place.

RA-665.   A week later, defendants promised the court that

> Dr. Neuberger has instructed Biolitec AG's German and Austrian counsel to develop a plan that would attempt to relocate Biolitec AG's corporate domicile back to Germany . . . .

RA-707.

Defendants' proffered experts both confirmed that "[i]t is theoretically possible" for "Biolitec AG to relocate its corporate domicile back to Germany" (RA-792) "through a downstream merger with a German subsidiary."  RA-824.

318308.2 3/17/2014

**Neuberger's Failure to Appear at the Show Cause Hearing**

Defendants requested that the Court allow Neuberger to participate in the show-cause hearing by video-link from Europe. The District Court denied the motion:

> The purpose of the hearing . . . is to permit Defendant Neuberger the opportunity to show cause why he should not be held in civil or criminal contempt for his violation of the court's order. . . .
>
> [There is no] indication that it is physically impossible for Dr. Neuberger to appear. Rather, the motion states that Dr. Neuberger is disinclined to appear, because he fears that the court may find him in civil contempt and order him, as a coercive measure, to be detained. The fear of possible consequences for contemptuous behavior does not, and simply cannot, constitute the sort of special circumstance that would justify disregarding the court's order to appear in person. . . .
>
> [T]he court . . . reiterates its order that Defendant Neuberger be present in the courtroom on April 10, 2013 for the hearing. Failure to appear . . . may itself constitute an additional basis for a finding of civil or criminal contempt.

RA-699-701. On the morning of the hearing, defendants informed the Court that Neuberger would not appear. RA-702.

**April 10 Show Cause Hearing**

At the show cause hearing the District Court said:

> I set today as an opportunity for the principal of the defendants here, Wolfgang Neuberger, to appear and

19

318308.2 3/17/2014

> offer testimony in connection with the motion for civil
> contempt.

> I ordered him to be here and he is not going to be
> here…He clearly was aware of the order that he be
> here…

RA-739-740. [4]

The District Court found that "whether there was an act of civil contempt on the part of the corporate defendants and by Mr. Neuberger is beyond dispute by more than clear and convincing evidence."  RA-743-744.   "I issued an order. I got a promise there would be compliance, and . . . the order was flouted."  RA-746. The District Court stated that it would issue an arrest warrant for Neuberger and impose periodic, conditional fines on the defendants:

> My goal . . . in issuing the warrant and in imposing the
> fine is to obtain compliance with my order.  That is the
> only goal I have with these civil sanctions.

RA-748.  The Court stated: "I want it to be crystal clear that the situation [needs to be] restored to the position that it would have been in had the merger never taken place."  RA-752.

---

[4] On the morning of the hearing, defendants indicated for the first time that they wanted to have their German lawyer, Denis Gebhardt, testify in Neuberger's place. RA-707.  The District Court held that it "wouldn't allow Dr. Gebhardt to testify without giving plaintiff the opportunity to depose him first . . . and retain its own expert to offer responsive testimony. . . . I think it would be unfair and inappropriate to allow Dr. Gebhardt to testify here today."  RA-744-745.

**The April 11 Contempt Order**

On April 11, 2013, the District Court issued its 20-page contempt decision.

The Court found:

> Plaintiff can easily make out each of the[] elements [of
> civil contempt] with clear and convincing evidence from
> the record.  First, Defendants had notice of the order as
> parties to the case . . . .
>
> Second, the order could not have been more clear and
> unambiguous. . . .
>
> Third, Defendants repeatedly assured the court that they
> could and would comply with the order . . . .
>
> Finally . . . . Defendants themselves filed a notice with
> this court that [they] completed "Biolitec AG's
> downstream merger with its Austrian subsidiary." . . .
>
> [T]he placement of Defendants' assets outside the reach
> of Plaintiff in the likely event that Plaintiff recovers
> judgment [] was precisely the reason that Defendants
> went forward with their contumacious behavior. . . .
>
> The effectuation of the downstream merger . . . in the
> face of explicit reassurances to this court orally and in
> writing that Defendants intended to comply [] constitutes
> the most flagrantly offensive violation of a court order
> that this court has personally encountered. . . .
>
> [T]he record is clear that [the merger] can be undone
> through a determined, good faith effort.  At the oral
> arguments, counsel for Defendants outlined the steps that
> would have to be taken to restore the status quo ante. . . .
> Defendants' general credibility about what it can or
> cannot do is subject to doubt.  In any event, Defendants
> concede that restoring the status quo ante would in fact
> not be impossible . . . .

21

RA-725-727, 730-732.  The District Court issued a warrant for Neuberger's arrest

and imposed a series of coercive fines – $1 million on May 10, $2 million on June

1, $4 million on July 1, $8 million on August 1, and $8 million on the first of each

month thereafter.  RA-733-734.  The Court specifically noted that

> Defendants "have the keys [to their] prison in their own
> pockets.". . . The coercive fines and arrest warrant (or
> imprisonment, when Defendant Neuberger is
> apprehended) will be lifted as soon as the court is
> satisfied that the status quo ante has been restored.

RA-734.  The Court referred the issue of criminal contempt to the office of the

U.S. Attorney (RA-735), which is currently investigating a possible indictment.

Brief at 20.

**Defendants Refused to Pay Any of the Fines and Took No Steps to Restore the
Status Quo Ante, and Neuberger Remains a Fugitive**

When the contempt decision was still in doubt, defendants promised that

"Dr. Neuberger and Biolitec AG shall comply with any remedial measures that this

Court deems appropriate."  RA-707.  But after the ruling was issued, defendants

took absolutely no steps to restore the status quo ante.  They never submitted their

promised plan (*see* RA-707) to reverse the effects of the merger.  They never paid

a penny of the contempt fines.  RA-830.  And Neuberger chose to defy the arrest

warrant and become a fugitive – a choice obviously made easier by his overseas

location.

318308.2 3/17/2014

In defendants' own words, they "have made no attempt to comply with those [contempt] sanctions." RA-979.

**Defendants' Motions for Relief from the Contempt Order**

In May 2013, defendants moved for "relief" from the contempt order, to recuse the District Judge, and to vacate the underlying injunction. RA-39-40. As the District Court summarized, "Defendant Neuberger has not appeared [in response to the warrant], and no plan has been offered by Defendants even to begin to" restore the status quo ante. "Instead, defendants have filed a motion for relief from the contempt order . . . a motion for recusal . . . and a motion to vacate the preliminary injunction." RA-1170.

Defendants admitted that the arguments in their post-contempt motions had already been "repeatedly [and unsuccessfully] raised . . . before th[e District] Court and the First Circuit." RA-967.

**The District Court Denied Defendants' Post-Contempt Motions**

On August 27, the District Court issued a 29-page decision denying defendants' motions. The Court noted that there

> continues to be[] clear and convincing <u>undisputed</u>
> evidence conclusively satisfying each of the[ four]
> requirements [for finding civil contempt]. . . Defendants,
> indeed, have effectively conceded that each and every
> one of these four criteria have been satisfied in this
> case…

RA-1175 (emphasis in original). The Court found defendants' claim that it would

be impossible to restore the status quo "not supported by the record and lack[ing]

credibility." RA-1184. The Court also found that

> whatever disagreements may exist among the parties'
> experts, one thing is clear: the merger has placed Plaintiff
> in a more difficult position than it would have occupied
> had the merger never occurred. Moreover, ample
> evidence exists to support the conclusion that this was
> Defendants' clear motive for proceeding with the merger.
> Other purported justifications are simply not credible.

RA-1185.

The Court found that "[n]o exceptional circumstances exist under Rule 60

justifying reconsideration" of the contempt order (RA-1181) and that "no sufficient

new evidence has been proffered by Defendants to merit any reconsideration" of

the injunction (RA-1187).

The Court also denied defendants' motion for recusal, noting that "[a]

litigant cannot behave badly, then point to the judge's disapproval of its

misconduct . . . as a basis to remove him or her." RA-1191.

Defendants filed a petition for writ of mandamus in this Court seeking

recusal. On November 18, 2013, this Court summarily denied the petition:

> [T]he judge expressed entirely understandable dismay
> that petitioners violated a preliminary injunction which
> had previously been upheld by this court and then
> attempted to justify their behavior by arguing, in part,
> that their actions did not violate the underlying purpose

> of the injunction. . . . Petitioners have not remotely made
> the requisite showing.

Addendum at 1.

### Defendants' Confirmation That They Will Take No Steps to Comply with the Contempt Order or Return to Compliance with the Injunction

On August 30, 2013, the District Court ordered defendants "to update the

court on the steps they were taking to comply with the contempt decision."  RA-

1205.  In their response, defendants once again

> informed the court that they would not produce
> Defendant Neuberger, that they would not pay the
> assessed fines, and that they had no intention of taking
> any action to undo the effects of the BAG merger. . . .
>
> Defendants have made it crystal clear . . . that they do not
> intend to comply either with the Court's preliminary
> injunction or with the orders issued by the court to
> compel compliance with the preliminary injunction.

RA-1205, 1239.

### The District Court's Entry of Default Judgment Based on Defendants' Discovery Abuses

On January 14, 2014, the District Court entered default judgment against

defendants pursuant to FRCP 37.  The Court found that "Defendants' misconduct

during the course of discovery has traveled well beyond the boundary of what is

even remotely acceptable in the conduct of litigation."  RA-1197-1198.

> Plaintiff has been attempting to conduct discovery . . . .
> [but] has been thwarted at virtually every turn by
> Defendants' outrageous misconduct.  Specifically,

318308.2 3/17/2014

> Defendants have refused to produce Defendant
> Neuberger and other key witnesses for their depositions,
> and they have failed to produce documents available to
> them that are critical to Plaintiff's case.

RA-1206.

## STANDARD OF REVIEW

The District Court's finding of civil contempt and its choice of coercive

sanctions are reviewed for abuse of discretion.  "In civil contempt cases . . . . [a]s

to findings of fact, we review for clear error, while '[t]he trial court's ultimate

finding on contempt is reviewed for abuse of discretion.'"  *United States v.*

*Saccoccia*, 433 F.3d 19, 27 (1ˢᵗ Cir. 2005) (*quoting from Project B.A.S.I.C. v.*

*Kemp*, 947 F.2d 11, 15-16 (1ˢᵗ Cir. 1991)).

> A trial court has wide discretion in its choice of sanctions
> [in civil contempt]. . . . Once the trial court has chosen a
> particular sanction, appellate review is for abuse of
> discretion. . . . When money is the sanction of choice, the
> abuse of discretion standard pertains not only to the trial
> court's selection of the sanction but also to its
> quantification . . . .

*Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77-78 (1ˢᵗ Cir. 2002)

(citation omitted).  *See also G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*,

639 F.2d 29, 41 (1ˢᵗ Cir. 1980) ("a court has wide discretion" with respect to

"contempt sanctions intended to coerce future compliance"); *In re Grand Jury*

*Proceeding*, 13 F.3d 459, 461 (1ˢᵗ Cir. 1994) ("review[ing] the decision below for

318308.2 3/17/2014

abuse of discretion" where defendant was incarcerated for 18 months as a civil contempt sanction).

The denial of defendants' Rule 60(b) motions to vacate the contempt order and preliminary injunction is similarly subject to deferential review. "[R]elief under Rule 60(b) is extraordinary in nature and [] motions invoking that rule should be granted sparingly. . . . [w]e defer broadly to the district court's informed discretion in granting or denying relief." *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002). "The denial of a Rule 60(b)(6) motion is typically reviewed for abuse of discretion." *Ungar v. PLO*, 599 F.3d 79, 83 (1st Cir. 2010).

## SUMMARY OF ARGUMENT

It is undisputed that all four elements of civil contempt were met in this case. Defendants had notice of the preliminary injunction, which clearly and unambiguously forbid the completion of BAG's downstream merger; defendants could have complied simply by not proceeding with the merger, but instead they completed it. In defendants' own words, they "violated the preliminary injunction by completing the merger and it's absolutely clear that the preliminary injunction said do not complete the merger." RA-653-654.

In response to this blatant act of contempt, the District Court properly exercised its discretion by imposing conditional, periodic fines and a conditional arrest warrant, the paradigmatic civil contempt sanctions. The District Court

318308.2 3/17/2014

repeatedly promised to revoke or reconsider the sanctions if defendants took any substantial steps to restore the status quo ante, and defendants explicitly admitted that doing so was possible.

The District Court correctly rejected defendants' post-hoc, unsupported claims that the merger caused no harm. This Court had already affirmed the validity of the injunction, including the showing of irreparable harm, and the District Court correctly found (though it did not need to do so) that completion of the merger grievously harmed AngioDynamics.

Defendants' fugitive status should bar this appeal. They have disregarded the underlying preliminary injunction, the order for Neuberger to appear at the show cause hearing, the warrant for Neuberger's arrest, and the coercive fines imposed by the District Court. It is abundantly clear that defendants would simply disregard an adverse decision by this Court.

The District Court correctly rejected defendants' collateral attack on the injunction based on purported evidence regarding the location of BI's stock certificates. Defendants had failed to present such evidence in the underlying litigation of the injunction, and in any event, the later-presented evidence showed that the shares in fact were located in the United States at the relevant time.

The District Court correctly ordered substituted service on Neuberger and

Biomed.  The record showed their deliberate evasion, and AngioDynamics had

made numerous service attempts in Germany, Malaysia, and Dubai.

## ARGUMENT

### I.  DEFENDANTS DO NOT DISPUTE THAT THE FOUR ELEMENTS OF CIVIL CONTEMPT ARE MET IN THIS CASE

In this Circuit,

> [t]o prove civil contempt, a movant must show that (1) the alleged contemnor had notice of the order, (2) the order was clear and unambiguous, (3) the alleged contemnor had the ability to comply with the order, and (4) the alleged contemnor violated the order. . . . [T]he movant must make this demonstration with clear and convincing evidence. . . .

*Hawkins v. HHS*, 665 F.3d 25, 31 (1st Cir. 2012) (citation and internal quotation

marks omitted).

The District Court correctly found that all four elements were met based on

undisputed evidence.

On element one, defendants opposed the preliminary injunction

aggressively, and were notified instantly, as parties to the case, when the injunction

issued.[5]  On element two, the order was clear and unambiguous – not to carry out

---

[5] Indeed, as the Court was rendering its decision to enter the injunction, it said from the bench to defendants' counsel: "I have decided that the merger should not take place, and I expect that that order will be adhered to."  Addendum at 18.

the downstream merger or transfer shares in any defendant entity. RA-590. On

element three, defendants could have complied with the order by not proceeding

with the merger.[6] On element four, defendants stated in open court:

> [W]e acknowledge that we violated the text of the order. . . .
>
> We violated the preliminary injunction by completing the merger and it's absolutely clear that the preliminary injunction said do not complete the merger. . . .
>
> [Y]our injunction right now says do not complete the merger. Well, that has been completed and I understand that you are upset about it. Frankly if I was in your shoes, I would be upset about it too.

RA-651-654, 664.

In short, the four elements of civil contempt are undisputedly met.

## II.    THE SANCTIONS THE DISTRICT COURT ENTERED WERE ENTIRELY PROPER AND APPROPRIATE

### A.    Arrest Warrants and Periodic Fines, to Be Lifted When the Contempt Is Purged, Are the Paradigmatic Coercive Civil Contempt Sanctions

As this Court has made clear, "[t]he sanctions of imprisonment and

monetary fines are available in both civil and criminal contempt proceedings." *In*

---

[6] Defendants conceded that the merger was completed at their "direction." RA-591.

*re Kave*, 760 F.2d 343, 351-352 (1ˢᵗ Cir. 1985).[7]  "Where the court's purpose is to

coerce compliance, the available remedies include imprisonment of the contemnor

until he purges himself of contempt by complying . . . and a prospective,

conditional fine."  *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29,

41 n.13 (1ˢᵗ Cir. 1980).  "A civil contempt proceeding for the purpose of seeking

compliance with an order of the court" can result in "the imposition of coercive,

nonpunitive fines, and/or imprisonment subject to release by purging of the

contempt."  *United States v. Marquardo*, 149 F.3d 36, 41 (1ˢᵗ Cir. 1998).  In "civil

contempt . . . . [c]oercion may be achieved by imprisonment of the contemnor until

he purges himself of the contempt, and/or by a prospective, conditional fine."

*United States v. Professional Air Traffic Controllers Organization (PATCO)*, 678

F.2d 1, 4 (1ˢᵗ Cir. 1982).[8]

---

[7] Defendants themsleves cited jailing a civil contemnor until compliance is obtained as "[t]he classic example, of course."  RA-664.

[8] Although the purpose of the District Court's sanctions was to coerce compliance with the preliminary injunction, the sanctions also appropriately served to maintain the court's authority.  "Federal courts are empowered to issue civil contempt sanctions to 'protect[] the due and orderly administration of justice and . . . maintain[] the authority and dignity of the court.'"  *Goya Foods*, 290 F.3d  at 78 (*quoting from Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).  "Civil contempt proceedings, although primarily remedial, also 'vindicate . . . the court's authority'."  *Int'l Union v. Bagwell*, 512 U.S. 821, 845 (1994) (Ginsburg, J., concurring) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 443 (1911).  "'[A] remedial fine imposed for civil contempt . . . vindicate[s] the District Court's authority over a recalcitrant litigant.'"  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (1991) (*quoting from Hutto v. Finney*, 437 U.S. 678, 691 (1978)).

### i. Defendants Explicitly Conceded that Neuberger's Failure to Appear at the Show Cause Hearing Justified the Issuance of an Arrest Warrant

Defendants told the District Court that "you would certainly be within your authority to issue an arrest warrant if [Neuberger] did not comply with your order to come here and testify" at the show cause hearing (RA-650).

Defendants were correct in making this concession. *See Goya Foods,* 290 F.3d at 69 (district court "directed [defendants] to appear personally and show cause why they should not be adjudged in contempt . . . . When neither defendant appeared at the appointed time . . . the court held them in contempt[ and] issued warrants for their arrest"); *RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1312 (11th Cir. 2013) (when alleged contemnor "did not appear . . . . the court issued a bench warrant for [his] arrest"); *United States v. Smith*, 1991 U.S. App. LEXIS 13663, *3 (9th Cir. June 24, 1991) ("the district court ordered Smith to appear . . . to show cause why he should not be held in civil contempt . . . . After he failed to appear, the district court issued a bench warrant for Smith's arrest") (reversing on other grounds).

Neuberger, of course, did not appear at the show cause hearing (RA-739), and thus, by his own admission, is properly subject to the arrest warrant.

**B.    The District Court Made Absolutely Clear that Its Sanctions Would Be Lifted As Soon As Defendants Restored, or Even Began to Restore, the Status Quo Ante**

The Supreme Court has said that a contempt sanction "is considered civil and remedial if it [] coerces the defendant into compliance with the court's order . . . it is civil [] if the contemnor is afforded an opportunity to purge." *Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994) (citation and internal quotation marks omitted). "Like civil imprisonment, [periodic] fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Id.* As defendants conceded, "[i]f the court orders something and the party is not complying, you have the right to impose sanctions until you obtain compliance." RA-664.

The District Court made clear repeatedly that the purpose of its sanctions was to coerce a return to compliance with the preliminary injunction, and that the sanctions would be lifted if defendants acted to do so:

- April 11 decision (RA-718): "The court will enter coercive sanctions to ensure Defendants' prompt compliance with the [preliminary injunction] order. These coercive sanctions will remain in place until Defendants effectively restore the parties to the status quo ante."

- April 11 decision (RA-734): "The coercive fines and arrest warrant (or imprisonment, when Defendant Neuberger is apprehended) will be lifted as soon as the court is satisfied that the status quo ante has been restored."

- April 10 hearing (RA-782): "Where I believe that the extreme contumacy demonstrated by the defendant here is being erased or substantially moderated, I will consider appropriate adjustments in the coercive order."

- August 27 decision (RA-1181): "[T]he sanctions are conditional and may be reconsidered when and if Defendants ever propose a plan for restoring the status quo prior to the merger."[9]

The District Court specifically found that the sanctions were necessary to achieve coercion, noting that the status quo ante would be restored far more rapidly

> if [Neuberger] was sitting over in Ludlow [prison]. I have a suspicion that the process would move along a bit more quickly, and I have no confidence that the process would have the substantive effect that I want it to have . . . [or] would be effectuated with the promptness that I expect without the coercive force of physical detention. . . . The fine is also equally necessary, and I believe that with that type of monetary sanction hovering over the defendants, a complete and prompt return to status quo ante should happen . . . and that's what I expect. . . . I am convinced that only the coercive force of potential physical detention and monetary sanctions will ensure

---

[9] In moving for contempt, AngioDynamics had asked the court to coerce compliance: "[we] asked you to enforce the order and that's what you're talking about trying to do. . . . we're talking about coercing the defendant into compliance." RA-679-680.

> prompt and complete compliance with the Court's
> order…

RA-774-775.

Notably, the District Court allowed defendants time to begin working on

restoring the status quo; the first fine did not go into effect for a month after the

show cause hearing (and some 56 days after the completion of the merger), and the

fines did not accrue daily but rather monthly.  RA-736.  Moreover, the Court

extended the beginning of the fines by 9 days at defendants' request.  RA-1183.

### C.    Defendants Admitted They Could Restore the Status Quo Ante

Defendants deliberately completed the merger and could have forborne

doing so.  *See* RA-592-593 (admitting that BAG faced the "dilemma" of whether

to go forward and chose to do so in spite of the injunction).  After the merger was

complete, they admitted that restoring the status quo ante (that is, moving BAG

back to Germany) was possible.

Defense counsel specifically said that "it may be possible to turn back the

clock and to relocate the domicile back to Germany" (RA-664), and added:

> I've discussed this with the client and its advisors and . . .
> it would basically have to do the same thing that was
> done to move the domicile to Austria but in reverse.

RA-665.   At the show cause hearing, defendants stated:

> Dr. Gebhardt was prepared today . . . to explain how the
> corporate domicile could be relocated to Germany . . . .

> [W]hat [Gebhardt] was going to explain is that . . . the
> first step would be to acquire a preexisting shelf company
> . . . in Germany . . . .
>
> Then you have the company's lawyers and accountants
> do basically the same thing they did for this merger but in
> reverse . . . . There would be a shareholders' meeting. . . .
> Then once the shareholders' vote is taken . . . the merger
> could be completed within another two to three months.

RA-771-773.[10]

Defendants' proffered experts later confirmed that "[i]t is theoretically

possible" for "Biolitec AG to relocate its corporate domicile back to Germany"

through a second downstream merger (RA-792, 824).

Defendants bore the burden of showing they could not restore the status quo.

As this Court has said, the contemnor has "the burden of proving impossibility, and

that burden is difficult to meet"; the contemnor's "own denials which the court

finds incredible in context" are insufficient to meet the burden. *United States v.*

*Puerto Rico*, 642 F.3d 103, 108 n.8 (1st Cir. 2011) (quoting from *Fortin v. Comm'r*

*of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 796 (1st Cir. 1982) and *Maggio v.*

*Zeitz*, 333 U.S. 56, 75-76 (1948)).   *See also Hicks v. Feiock*, 485 U.S. 624, 638 n.9

(1988) (sanctions in civil contempt can be avoided when "it is *clearly established*

---

[10] At the show cause hearing, defendants said: "if you are committed to requiring
basically that the genie be put back into the bottle, give the company a couple of
weeks to come up with a specific plan . . . . Dr. Neuberger . . . will be very
interested in proposing a plan to ADI to start implementing this."  RA-780, 783.

318308.2 3/17/2014

that the alleged contemnor is unable to comply with the terms of the order."
(emphasis added)).

Having admitted that the status quo could be restored (though they claimed it would be burdensome), defendants obviously failed to meet their burden of showing impossibility. The District Court correctly found that defendants' "argument that any effort to . . . purge themselves from contempt would be impossible is not supported by the record and lacks credibility." RA-1184.

> **D.    The District Court Repeatedly Made Clear That It Would Consider any Plan Defendants Proposed to Restore the Status Quo Ante**

The District Court told defendants at the show cause hearing:

> I will consider any plan that you want to submit at any time and I will revoke the warrant as soon as I am convinced that what has been done has resulted in effective and substantive compliance with the Court's initial order.

> This is not intended to be punitive. . . . I want my order complied with . . . .

> Dr. Neuberger and the corporate defendants can . . . make whatever efforts they want to on their own timetable starting tomorrow. If you want to at any point thereafter to move to vacate or withdraw the warrant based upon any actions that they commit themselves to, I will be more than willing to consider those actions . . . .

> Where I believe that the extreme contumacy demonstrated by the defendant here is being erased or substantially moderated, I will consider appropriate adjustments in the coercive order . . .

37

RA-781-782.   Four months later, the District Court repeated that it

> would immediately consider any plan offered by
> Defendants to revoke, eliminate, or in any practical way
> render nugatory, Defendants' action in defying the
> court's order and proceeding with the merger. . . .

> No such plan has ever been submitted.

> Even now, if the court were convinced that a plan
> submitted by Defendants were effectively aimed at
> remedying the contempt, a motion to reduce or vacate the
> sanctions would be considered. . . .

RA-1170, 1184.

### E.    Coercing a Contemnor to Restore the Status Quo Ante Is an Appropriate and Common Civil Contempt Sanction

The District Court, in imposing sanctions intended to restore the status quo

ante, acted exactly as courts faced with civil contempt should and do.  "'The

measure of the court's power in civil contempt proceedings is determined by the

requirements of full remedial relief.'"  *Goya Foods*, 290 F.3d at 79 (*quoting from*

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949)).

Civil contempt sanctions "serve[] . . . [to] restor[e] th[e injured] party to the

position it would have held had the court's order been obeyed."  *Hartman v. Lyng*,

884 F.2d 1103, 1106 (8th Cir. 1989) (citation and internal quotation marks

omitted).  *See also Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637

(3d Cir. 1982) (trial court may seek "restoration of the status quo ante bellum by a

38

coercive contempt order"); *In re C. W. Mining Co.*, 625 F.3d 1240, 1247 (10th Cir. 2010) (affirming civil contempt order where relief returned parties to status quo).

Restoring the status quo can include coercing the contemnor to take affirmative steps.  For example, federal courts have used the civil contempt power to coerce a "seller to return the purchase price" to a buyer (*Ross v. Bank South, N.A.*, 885 F.2d 723, 742 (11th Cir. 1989)), to remit money it had withheld (*Canon U.S.A., Inc. v. Lease Group Res., Inc.*, 2005 U.S. Dist. LEXIS 7452, *12-13 (E.D. Va. Apr. 19, 2005)), to deliver software to the Court and stop working on certain software programs (*Equinox Software Sys. v. Airgas, Inc.*, 1997 U.S. Dist. LEXIS 119, *20-22 (E.D. Pa. Jan. 7, 1997)), to restore monies received (*In re Federal Facilities Realty Trust*, 227 F.2d 651, 656 (7th Cir. 1955)), to return leases to a receiver (*SEC v. First Choice Mgmt. Servs.*, 709 F.3d 685, 688 (7th Cir. 2013) (Posner, J.) (noting that the appropriate sanction was to "restore[] the parties to the status quo")), to replace board members and transfer certain corporate shares to plaintiff (*Satyam Computer Servs. v. Venture Global Eng'g, LLC*, 2008 U.S. Dist. LEXIS 3906, *30-31 ( E.D. Mich. Jan. 17, 2008); to return over $700,000.00 "to restore the status quo before the transaction" (*SEC v. AmeriFirst Funding, Inc.*, 2008 U.S. Dist. LEXIS 7510, *53-56 (N.D. Tex. Feb. 1, 2008)); to disgorge fees collected in violation of the injunction in order "to restore the status quo" (*FTC v. Leshin*, 618 F.3d 1221, 1238-1239 (11th Cir. 2010) (rejecting argument that

sanctions were criminal in nature)); to refund monies with interest in order to "revers[e] the [enjoined] liquidations and restor[e] the status quo ante" (*Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1162, 1171-1172 (Ct. Int'l Trade 2004)).

> The effect of the exercise of the [civil] contempt power should be that the injured party is made whole and the court's order is obeyed, thus restoring the matter to the situation which existed before the contemptor disregarded the court's order.

*In re Haddad*, 68 B.R. 944, 952 (Bankr. D. Mass. 1987).

> Civil contempt . . . . sanctions . . . . are designed to restore the status quo which existed prior to the violation of the judicial order.

*In re Naudain, Inc.*, 32 B.R. 880, 884 (Bankr. E.D. Pa. 1983) (citation and internal quotation marks omitted). "Civil contempt sanctions [include] . . . orders designed to restore the status quo." *Fowler v. Huber*, 437 F.2d 1117, 1118 (5th Cir. 1971).

> [T]he Court will be guided by the principle that sanctions imposed after a finding of civil contempt to remedy past noncompliance with a decree . . . [should] restore the parties to the position they would have held had the injunction been obeyed.

*Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (citation omitted).

"[A]cts done in violation of [a] discharge injunction may be remedied by putting the debtor back in the status quo at the time of the violation." *In re Herbert*, 1998 Bankr. LEXIS 617, *15 (B.A.P. 9th Cir. 1998). "[T]he goal of civil

contempt remedies" includes "restoring the status quo." *SEC v. Northshore Asset Mgmt., LLC*, 2006 U.S. Dist. LEXIS 39255, *9 (S.D.N.Y. June 14, 2006). *Accord Yash Raj Films, Inc. v. Bobby Music Co. & Sporting Goods, Inc.*, 2006 U.S. Dist. LEXIS 96376, *19 (E.D.N.Y. July 5, 2006) (civil contempt "sanction is employed . . . to . . . restore the parties to the position they would have held had the injunction been obeyed") (citation and internal quotation marks omitted); *United States v. Dinwiddie*, 885 F. Supp. 1299, 1306 n.8 (W.D. Mo. 1995) ("[S]anctions imposed after a finding of civil contempt . . . [should] restore the parties to the position they would have held had the injunction been obeyed") (citation and internal quotation marks omitted).

In *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1076 (D.C. Cir. 1981), the plaintiff filed an emergency motion to enjoin completion of a merger pending appeal. The court of appeals granted the stay, but the defendants had already consummated the merger. The Court of Appeals found that the companies "acted at their peril in completing the act that the [plaintiff] sought to enjoin," and directed the defendants to "undo the merger" (*id.*) under its "authority to command return to the status quo ante." *Id.* at 1077. Here, where the injunction against the merger had been in effect for over six months before defendants completed it, the District Court correctly acted to coerce a return to the status quo.

318308.2 3/17/2014

**F.     The District Court Correctly Considered the Severe Harm to AngioDynamics in Fashioning Its Sanctions**

Defendants self-servingly argue that their completion of the enjoined merger

caused no harm to AngioDynamics.  Brief at 34-35.  The District Court correctly

recognized this as an inappropriate

> attempt to re-litigate the finding . . . that Plaintiff would
> be irreparably harmed by the merger. . . . Two district
> court judges rejected Defendants' arguments in entering
> the TRO and then preliminary injunction.  This court
> again rejected these arguments on motions for
> reconsideration and modification.  The First Circuit
> rejected these arguments on motions for modification and
> direct appeal.

RA-728.

> In granting the original motion for preliminary
> injunction, and in reconsidering the injunction, the court
> was required to consider, and did consider, the issue of
> likely harm to Plaintiff. . . .
>
> Defendants [previously] made very nearly the same
> argument they are offering here: that the merger . . .
> would [not harm Plaintiff]. . . . Plaintiff argued
> vigorously to the contrary . . . . The court agreed with
> Plaintiff's argument. . . .
>
> Plaintiff demonstrated likelihood of harm. This court
> found this originally and found it on reconsideration, and
> the Court of Appeals affirmed this finding.

RA-1178-1179.

As the District Court aptly summarized:

> [o]nce the court found a likelihood of harm and issued an injunction, Defendants were not entitled to ignore the order and then demand a renewed hearing on the issue of harm to avoid contempt.

RA-1185. And, indeed, the Supreme Court has made clear "the long-standing rule" that

> a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience.

*United States v. Rylander*, 460 U.S. 752, 756-57 (1983) (*quoting from Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)). "It is well-settled law that a party cannot at a contempt proceeding contest the order with which he has failed to comply." *United States v. Paccione*, 975 F. Supp. 537, 544 (S.D.N.Y. 1997). *See also Central States, Southeast & Southwest Areas Pension v. Jansen,* 1991 U.S. App. LEXIS 11094, * 5-6 (7th Cir. May 22, 1991) (refusing to consider "collateral attack on the underlying" preliminary injunction in civil contempt appeal); *Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 208 F. Supp. 2d 387, 392 (E.D.N.Y. 2002) ("the validity of the preliminary injunction is not an appropriate consideration in a contempt proceeding").

43

Despite this rule, the District Court, showing extreme fairness to defendants,

considered the issue yet again in the contempt proceeding and found that

> the placement of Defendants' assets outside the reach of
> Plaintiff in the likely event that Plaintiff recovers
> judgment [] was precisely the reason that Defendants
> went forward with their contumacious behavior. . . .

RA-730.

> [T]he harm, in fact, has occurred more or less as
> predicted. . . . Defendants' argument that certain assets
> remain in Germany (exactly what these may be is not
> specified) and that the headquarters of this now-Austrian
> corporation (a lightly staffed office)[11] remain in
> Germany cannot obscure the fact that the merger has put
> Plaintiff in a substantially more difficult position in terms
> of enforcing any judgment it might receive in this court. .
> . .
>
> Defendants' arguments describing some supposed
> independent justification for the merger, apart from
> hamstringing Plaintiff, have never added up. . . . [A]ny
> rationale for the merger beyond harming Plaintiff's
> potential enforcement efforts is a fabrication.  Indeed,
> Defendant Neuberger's former associate, Stefan Spaniol,
> has submitted an affidavit confirming that Neuberger's
> intent in pushing forward with the merger, conveyed to
> Spaniol explicitly, was specifically to make enforcement
> of any judgment against BAG difficult if not impossible.
> . . .

RA-1179-1180.  The District Court's finding on this issue was not a "conclusion of

German law," as defendants absurdly claim (Brief at 35), but a finding of fact,

based on the evidence in the record viewed through the lens of common sense.

---

[11] Defendants have admitted that BAG is a holding company.  RA-684.

44

318308.2 3/17/2014

i.    **Defendants' Claim that AngioDynamics Was Not Harmed by the Merger Is Based Entirely on a One-Sentence, Unsupported, Self-Serving, Conclusory Assertion That Lacks Any Credibility**

All of defendants' claims that the merger did not harm AngioDynamics under "German law" are entirely dependent on the facially absurd factual premise the District Court correctly rejected – that the merger did not move any assets out of Germany.  The sole "evidence" defendants ever offered in support of this factual premise was a single sentence in a March 25, 2013 declaration by their employee Damian Plange:[12] "none of Biolitec AG's assets located in Germany, such as its bank accounts and its principal manufacturing subsidiary, CeramOptec GmbH, were relocated out of Germany, other than in the ordinary course of business." RA-619.[13]  Plange provided no estimate or claim as to the value of the assets he was talking about.  RA-619-620.  He did not even mention the subsidiaries worth tens of millions of euros that BAG owned (RA-917) that were transferred to the Austrian entity in the downstream merger (RA-591).  Defendants never stated what specific assets were located in Germany before the merger, or what were located in Germany after.  As the District Court noted, the assets that purportedly remained were "not specified."  RA-1179.

---

[12] Notably, Plange himself is located in Austria.  RA-812.

[13] Defendants' Brief repeats this assertion many times, but always cites back either to a prior assertion of counsel, to Plange, or to an expert declaration that itself relies on Plange.  *See* Brief at 6, 14, 17-18, 38; RA-591-592, 818-819.

45

Moreover, Plange admitted that defendants *did* move unspecified assets out of Germany "in the ordinary course of business." RA-619. This admission is particularly troubling because defendants repeatedly argued that all of the fraudulent transfers out of BI (which left BI insolvent) also happened in the ordinary course of business. *See* RA-892, 895, 907, and 909-910.

In addition, in direct defiance of a court order (*see* RA-21), defendants refused to produce BAG board minutes for the period when they decided to carry out the downstream merger and completed it. RA-1207. The minutes defendants did produce were heavily redacted without an accompanying privilege log. *Id.* Defendants also refused, despite the court order (RA-20-21), to provide any BAG financial statements or tax returns from after June 30, 2011. *Id.* Crucially, they also refused to produce Neuberger and other managing agents for depositions after the merger was completed. RA-1206-1211. They have thus entirely blocked discovery to investigate their self-serving factual assertion about the movement of assets.

Moreover, defendants offered no explanation of why, if their intention was anything other than interference with judgment enforcement, they could not have held off on completing the merger until the end of the case; as this Court noted, "delaying the merger would [have] cause[d] only minimal harm to defendants." RA-852. As the District Court found, "[d]efendants' arguments describing some

46

supposed independent justification for the merger, apart from hamstringing

Plaintiff, have never added up."  RA-1179.

Finally, if the defendants' claim of "no harm" were legitimate, they could

have come to the Court first and sought advance approval to carry out the

supposedly "harmless" merger.  But they waited until after the merger was

completed – and BAG had moved safely to Austria – before they revealed their

action, thus showing that they knew the merger was not "harmless" in any way.

In light of all these facts, the District Court correctly found defendants' "no

harm" argument lacked any factual basis.

### ii.  The District Court Properly Exercised Its Discretion in Excluding the Gebhart Testimony, Which Only Would Have Repeated Meritless Arguments the Courts Had Already Rejected

At the show cause hearing, defendants proffered expert testimony from their

German lawyer, Denis Gebhardt.  Gebhardt wanted to opine that the merger did

not harm AngioDynamics.  Brief at 36-37.  The District Court correctly found that

such an opinion, which was based entirely on the bogus non-movement of assets

claim, was substantively irrelevant.[14]

Defendants concede that Gebhardt's testimony would have been redundant

in any event.  As they state, "the Foreign Defendants had previously submitted a

_____

[14] Moreover, it was only on the morning of the hearing, after Neuberger announced his refusal to appear, that defendants suggested they wanted Gebhardt to testify. RA-981.

318308.2 3/17/2014

declaration from Rolf C. Land[g]raf, a German lawyer . . . explaining" the same

argument.  Brief at 37.  Gebhardt himself later admitted that the issue on which he

wanted to testify (RA-816) had been previously briefed and argued in the District

Court and this Court, and that both courts had "denied motions raising" the issue.

RA-821-822.  *See also* RA-887 (same issue raised in March 11, 2013 reply brief),

and RA-663 (same issue discussed thoroughly in oral argument before this Court).

## II.    DEFENDANTS' APPEAL SHOULD BE DISMISSED UNDER THE FUGITIVE DISENTITLEMENT DOCTRINE

Defendants do not need "relief" from the contempt order and the preliminary

injunction, because they have disregarded both orders.  Neuberger, "the principal

of the defendants" (RA-739), is literally a fugitive on the lam, having been subject

to an arrest warrant for nearly a year.

> The United States Supreme Court has long recognized an
> appellate court's ability to exercise its discretion by
> refusing to hear or to decide the appeal of a fugitive from
> justice.

*United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997) (*citing Molinaro v.*

*New Jersey*, 396 U.S. 365 (1970), and *Ortega-Rodriguez v. United States*, 507 U.S.

234 (1993)).  Fugitive status may arise in a civil matter.  *See Empire Blue Cross*

*and Blue Shield v. Finkelstein*, 111 F.3d 278, 281-282 (2d Cir. 1997) (civil matter

where defendants, facing a large judgment, evaded bench warrants for failure to

comply with court orders); *United States v. Melick,* 2012 U.S. App. LEXIS 26829,

48

*2 (1st Cir. 2012); *Walsh v. Walsh,* 221 F.3d 204, 214 (1st Cir. 2000) ("Generally,

courts will dismiss the civil or criminal appeal of a fugitive who is still on the

lam").

> The rationales for this doctrine include the difficulty of
> enforcement against one not willing to subject himself to
> the court's authority, the inequity of allowing that
> "fugitive" to use the resources of the courts only if the
> outcome is an aid to him, the need to avoid prejudice to
> the nonfugitive party, and the discouragement of flights
> from justice. . . .

> That any judgment rendered by this court can be viewed
> by the [defendants] as merely advisory (and their
> compliance therewith optional) is our main concern . . . .

*Barnette, supra,* 129 F.3d at 1183. In *Barnette*, the defendants were a husband and

wife; the husband had transferred stock to the wife to evade a judgment, and the

defendants were held in civil contempt when they refused to participate in

proceedings to enforce the judgment. *Id.* at 1181-82. The District Court issued

arrest warrants and the defendants' whereabouts were unknown. *Id.* The Eleventh

Circuit dismissed the defendants' appeals, noting that by becoming fugitives,

defendants had, "in reality, effect[ed] a stay of [] enforcement by making such

enforcement impossible." *Id.* at 1184.

> Mr. Barnette only wishes to use this court in an attempt
> to receive a favorable judgment – the only judgment by
> which, it appears, he will abide. We decline to
> participate. . . .

49

> [W]e have no confidence that, should we decide this case on the merits and hold that the district court properly entered the contempt order against her, Kathleen Barnette would recognize that court's authority . . . .
>
> Kathleen Barnette is a fugitive from the contempt order and the ensuing bench warrants.  Her status as a fugitive . . . flouts this court's authority . . . .
>
> Kathleen Barnette should not be entitled to an appeal in this court when she has repeatedly refused to abide by prior court orders[ and] removed herself to [Europe] (beyond our reach) . . .

*Id.* at 1184-1185.

In *Goya Foods, Inc. v. Unanue-Casal*, 275 F.3d 124, 128-129 (1st Cir. 2001), this Court noted the "substantial precedent for dismissing an appeal by one who has fled . . . . even where the appeal is taken from a civil judgment."  The facts in *Goya* were nearly identical to those in the present case.  In *Goya*, the plaintiff held a $6.9 million judgment against the defendants and obtained an injunction barring the defendants "from alienating or in any way assigning, transferring, selling or otherwise disposing or encumbering" various real property interests.  *Id.* at 125-126.  Plaintiff subsequently discovered that the defendants had, in fact, sold a valuable property and wired $4.2 million in proceeds to a Swiss bank account.  *Id.* at 126.  The District Court ordered defendants to appear personally to show cause why they should not be held in contempt.  *Id.* at 127.  The defendants did not appear; bench warrants were issued for their arrest.  *Id.* at 127-128.

> To date, they remain fugitives; they have not appeared before the court, nor have they made any effort to pay the underlying judgment.

*Id.* at 127.  This Court dismissed defendants' appeal from the contempt order:

> First, the underlying conduct with which we are concerned is extremely serious.  The charge is that, in the teeth of explicit orders prohibiting [appellants] from transferring the shares, both of them connived at violating the orders, enriched themselves by $4.2 million, and then fled the jurisdiction.  When instructed to return and defend their actions, they refused to do so.  This is . . . blatant defiance of explicit court orders.
>
> Second . . . . the flight grows directly out of Goya's effort to enforce its judgment in the civil proceeding which consumed years of litigation; and the appeal is from actions and orders of the district court designed to enforce that very judgment. . . .
>
> Third . . . appellants' main arguments are without merit; indeed, several were made unavailingly in the original action . . . .
>
> Lastly, flight in this instance is unfortunately . . . of a piece with the conduct of the appellants over a lengthy period. . . . The violation of explicit orders of the court and the flight to avoid the show cause hearing are only the latest in this series of evasions.

*Id.* at 129.  The same factors justify dismissing defendants' appeal here.

## III.  DEFENDANTS' POST-CONTEMPT MOTION TO VACATE THE PRELIMINARY  INJUNCTION WAS AN IMPROPER AND MERITLESS COLLATERAL ATTACK

### A.    The Motion to Vacate Was an Improper Collateral Attack

After full litigation of the preliminary injunction, including voluminous motion practice and an affirmance by this Court, defendants, having been found in contempt of the injunction, nevertheless moved to vacate it yet again.  RA-1009.

"Ordinarily the validity and terms of an injunction are not reviewable in contempt proceedings. . . . They may be challenged only on appeal in the original proceeding and not by collateral attack."  *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 34 (1st Cir. 1980) (citations omitted).   "The collateral attack on an injunction during contempt proceedings is prohibited if earlier review of the injunction was available."  *Western Water Management v. Brown*, 40 F.3d 105 (5th Cir. 1994) (*citing United States v. Ryan*, 402 U.S. 530, 532 n. 4 (1971)). *See also* Wright, Miller & Kane, *Federal Practice and Procedure* § 2960 (2013 ed.) ("the opportunity for effective review" of an order "bars later challenge in a contempt proceeding").

Here, of course, defendants obtained exhaustive review of the preliminary injunction[15], and this Court had *affirmed* the injunction before any contempt

---

[15] The post-contempt Rule 60(b) motion was defendants' *second* seeking to vacate the injunction in the District Court; the first was filed on February 12, 2013 (RA-31 (Dkt # 190)), and denied on February 25, 2013 (RA-32 (Dkt # 195)).

318308.2 3/17/2014

finding or sanctions occurred.  Therefore, the post-contempt motion to vacate was void *ab initio*.

### B.    The Motion Lacked Any Substantive Merit

Defendants sought to vacate the injunction under Rule 60(b)(5) ("applying [the injunction] prospectively is no longer equitable") and 60(b)(6) (the catch-all "any other reason that justifies relief").  RA-1006.

The "applying prospectively" provision in Rule 60(b)(5) has no relation to this case; it only applies "to injunctions and consent decrees that involve 'long-term supervision of changing conduct or conditions.' . . . [T]his provision is primarily concerned with 'institutional reform litigation' and similar matters." *Comfort v. Lynn Sch. Comm.*, 560 F.3d 22, 28 (1st Cir. 2009) (quoting from *Paul Revere Variable Annuity Ins. Co. v. Zang*, 248 F.3d 1, 7 (1st Cir. 2001)).

Similarly, under Rule 60(b)(6) "exceptional circumstances justifying extraordinary relief [] must obtain for . . . relief to be granted."  *In re LaFata*, 483 F.3d 13, 24 (1st Cir. 2007) (citation and internal quotation marks omitted).

> [A]n "[a]ppellant faces formidable hurdles in pursuing a
> 60(b)(6) claim. . . . [T]he "extraordinary circumstances"
> exception . . . [is] a "small escape hatch" . . .

*United States v. 6 Fox St.*, 480 F.3d 38, 45-46 (1st Cir. 2007) (citation omitted).

Defendants' Rule 60(b) argument is based on purported "evidence that the stock certificates [of BI] were not located in the United States when this action was commenced." Brief at 50.

As this Court noted, it was *defendants* who, in opposing the preliminary injunction, maintained "that ADI's ability to enforce the judgment in Germany would turn on whether BI's stock certificates were located in the United States" when this case began in October 2009. RA-851, Brief at 50. And yet they "presented no evidence as to the location of these certificates" in their voluminous submissions opposing the injunction. *Id.*

On December 11, 2012, AngioDynamics deposed Bolesh Skutnik, U.S.-based general counsel for defendants. In that deposition, AngioDynamics learned why defendants had never presented evidence on the location of the certificates. Skutnik testified that "there was a stock certificate . . . in the corporate books at East Longmeadow that showed Biolitec AG's ownership" of BI and that in December 2011 he "found that certificate in the books of Biolitec, Inc. at East Longmeadow." RA-994-995. When asked if he was "responsible for . . . maintaining the stock certificates of Biolitec, Inc.", Skutnik replied that "[t]he corporate books" had "been residing in [his] office space" from the "spring of 2009

318308.2 3/17/2014

to the present" and that "the stock certificate showing Biolitec AG's ownership of Biolitec. Inc." "was there."  RA-995-997.[16]

On January 22, 2013, AngioDynamics filed this testimony in this Court in opposition to defendants' motion to modify the injunction.  *See* Addendum at 19. In reply, defendants submitted a declaration from Skutnik in which he admitted that the transcript of his deposition, as quoted above, "is correct" (RA-947), but claimed that when he "referred to Biolitec AG's share certificate at my deposition, I was referring to a copy of that certificate."  RA-945-946.

Defendants also submitted a declaration from Neuberger, who did not contradict Skutnik's deposition testimony that the certificates were in Massachusetts at the relevant time (the commencement of the lawsuit in October 2009, *see* Brief at 50).  Neuberger only stated that he recalled "seeing" the "certificates in Germany around . . . November 2000" and "again in Germany" at some unspecified later time.  RA-627.  Defendants presented no other evidence regarding the location of the share certificates.[17]

---

[16] Defendants' own expert admitted that Skutnik thus testified BAG's "share certificate of Biolitec Inc. was located in his office at [the relevant] time."  RA-1048.

[17] Moreover, defendants refused to produce either Neuberger or Skutnik for continued depositions after their January 28, 2013 submissions regarding the share certificates.  RA-1206-1211.

318308.2 3/17/2014

The District Court properly exercised its discretion in rejecting defendants'
Rule 60(b) motion.

## IV. NEUBERGER AND BIOMED WERE PROPERLY SERVED WITH PROCESS

The District Court found that "[d]espite diligent efforts and substantial
expense" (RA-525), AngioDynamics had great difficulty serving Neuberger and
Biomed with process.  The Court found that "[t]he record demonstrates,
overwhelmingly and in detail, that Plaintiff's difficulties with service of process
arise from the evasive conduct of Defendant Neuberger."  RA-526.

Neuberger had retained counsel to represent him in this case within days of
its commencement in October 2009 (RA-83), but his counsel refused repeated
requests to accept service.  RA-66-67, 71-72, 77-78.  Other US litigants had served
Biomed and Neuberger in 2009 at an office address in Bonn, Germany (RA-97),
and defendants had stated in court filings that Neuberger was "Germany-based"
(RA-80).  AngioDynamics paid $15,492 to have the summons and complaint
translated into German (RA-90-91), and hired a process serving company, which
provided the documents to German authorities for service under the Hague
Convention.  RA-71.  AngioDynamics also hired German lawyers to assist with the
service efforts (RA-72), which included two additional attempts to serve in
Germany.  RA-74.  AngioDynamics arranged a service attempt at a scheduled

318308.2 3/17/2014

annual BAG shareholders meeting, but Neuberger slipped out a back exit to evade the bailiffs.  RA-292-293, Addendum at 20.

Defendants moved to dismiss for lack of service and asserted that AngioDynamics should have focused its service efforts on Dubai and Malaysia. RA-149.  AngioDynamics sent the summons and complaint by registered mail to Biomed's address in Malaysia and Neuberger's purported address in Dubai; the packages were never delivered.  RA-497-506.  AngioDynamics also sent the summons and complaint by Federal Express to the Dubai and Malaysia addresses; it was delivered and signed for at both addresses.  RA-510-519.

Finally, AngioDynamics sent a local process server to the Dubai address; a Biolitec group employee answered the door (RA-552) and told the process server that Neuberger "was a former tenant."  RA-521.   Defendants' counsel subsequently stated that Neuberger did in fact live there.  RA-552.

Given these facts, the District Court concluded that, although it did "not wish to suggest that the service effectuated up to now was ineffective," it would order service by email and through defense counsel under Fed. R. Civ. P. 4(f)(3) in order "to insure no ambiguity or future controversy with regard to service of process."  RA-526.

Defendants assert that the District Court abused its discretion because AngioDynamics's "attempts to serve Dr. Neuberger in Dubai were not 'prescribed' under U.A.E. law." Brief at 58.[18]

The leading case on alternative service under Rule 4(f)(3) explicitly rejects the argument defendants make:

> [A]s long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished *in contravention of the laws of the foreign country*. . . . .
>
> Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means. . . .
>
> [S]ervice of process under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief." . . . It is merely one means among several which enables service of process on an international defendant. . . .
>
> [W]e commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3). . . .
>
> [T]rial courts have authorized a wide variety of alternative methods of service including . . . delivery to the defendant's attorney, telex, and most recently, email. . . .

---

[18] Astoundingly, defendants attempt to support this argument with a new declaration submitted for the first time on this appeal and executed on February 10, 2014 (ADD-066) – nearly *three full years* after the service motions were considered and decided by the District Court.

318308.2 3/17/2014

> [W]hen [Plaintiff] presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft alternate means of service.

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-1016 (9th Cir. 2002) (emphasis added). *See also Orsi v. Sheik Falah Bin Zayed Bin Sultan Al-Nahyan*, 2012 U.S. Dist. LEXIS 136798, *6-7 (D. Mass. Sept. 25, 2012) (citing *Rio Properties* and noting that the "rule [is] designed to give [the] court flexibility and discretion") (citations and internal quotation marks omitted). *See also Russell Brands, LLC v. GVD Int'l Trading, SA*, 282 F.R.D. 21, 25 (D. Mass. 2012), *Igloo Prods. Corp. v. Thai Welltex Int'l Co.*, 379 F. Supp. 2d 18, 19-20 (D. Mass. 2005), and *Bower v. El-Nady*, 844 F. Supp. 2d 191, 196 n.11 (D. Mass. 2012) (approving email service).

Here, after a year had been consumed with expensive and complicated efforts to serve an evasive defendant in multiple countries, the District Court properly exercised its discretion to order substituted service.

59

# CONCLUSION

This Court should affirm the District Court's April 11, 2013 and August 27, 2013 orders. In the alternative, it should dismiss this appeal under the fugitive disentitlement doctrine.

Respectfully submitted,

Dated:   March 17, 2014

_____s/ *William E. Reynolds*_____
William E. Reynolds
First Circuit Bar No. 83366
Bond, Schoeneck & King, PLLC
Attorneys for Plaintiff-Appellee
111 Washington Avenue
Albany, New York 12210
Phone:  (518) 533-3000
Fax:  (518) 533-3299
wreynolds@bsk.com

60

318308.2 3/17/2014

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,448 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman style.

Dated:  March 17, 2014                           *s/ William E. Reynolds*
                                                 William E. Reynolds
                                                 First Circuit Bar No. 83366
                                                 Bond, Schoeneck & King, PLLC
                                                 Attorneys for Plaintiff-Appellee
                                                 111 Washington Avenue
                                                 Albany, New York 12210
                                                 Phone:  (518) 533-3000
                                                 Fax:  (518) 533-3299
                                                 wreynolds@bsk.com

# APPELLEE'S ADDENDUM

**Pursuant to First Circuit Rule 28.0(b)(1)**

# TABLE OF CONTENTS

**Item** <span style="float:right">**Page**</span>

November 18, 2013 Judgment of this Court, Case No. 13-2203,
*In re Biolitec AG, et al.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Pages 4, 5, 8, and 11 of the Brief Defendants[1] filed in this Court on January 18,
2013 in Case No. 12-2044, *AngioDynamics, Inc. v. Biolitec AG, et al.* . . . 2

Page 1 of the August 29, 2012 Emergency Motion of Defendants to Vacate TRO
filed in this Court in Case No. 12-2044. . . . . . . . . . . . . . . . . . . . . . . . . . 6

August 29, 2012 Order of this Court in Case No. 12-2044. . . . . . . . . . . . . . . . .7

Pages 1 and 12 of Defendants' Motion to modify preliminary injunction, filed in
this Court on January 14, 2013 in Case No. 12-2044. . . . . . . . . . . . . . . . . 8

February 4, 2013 Order of this Court in Case No. 12-2044. . . . . . . . . . . . . . .10

Page 3 of the Declaration of Denis Gebhardt, filed by Defendants in the
District Court on September 18, 2012 (Docket No. 144-2) . . . . . . . . . .11

Page 1 of the Declaration of Edward Griffith, filed by Defendants in the
District Court on December 3, 2012 (Docket No. 179) . . . . . . . . . . . . . . .12

Page 3 of the Declaration of Thomas Trettnak, filed by Defendants in this
Court on January 14, 2013, in Case No. 12-2044    . . . . . . . . . . . . . . . . . 13

Page 9 of Defendants' Motion to Vacate Preliminary Injunction, filed in
the District Court on February 12, 2013 (Docket No. 190) . . . . . . . . . . . .14

Biolitec "Ad-hoc News" Statement Dated March 27, 2012, filed by Defendants
in the District Court on August 27, 2012 (Docket No. 118-7) . . . . . . . . . . .15

---

[1] In this Table of Contents, "defendants" refers to Biolitec AG, Biomed
Technology Holdings, Ltd., and Wolfgang Neuberger.

Page 1 of Defendants' Memorandum of Law seeking reconsideration of
preliminary injunction, filed in the District Court on
September 26, 2012 (Document 152) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Page 5 of Defendants' Supplemental Response filed in this Court on
February 1, 2013 in Case No. 12-2044 . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Page 94 of the Transcript of the September 13, 2012 District Court hearing
regarding the preliminary injunction (Docket No. 142) . . . . . . . . . . . . 18

Page 10 of AngioDynamics's opposition to defendants' motion to modify
preliminary injunction, filed in this Court on January 22, 2013
in Case No. 12-2044. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Page 2 of the August 17, 2012 Declaration of Stefan Spaniol, filed by
AngioDynamics in the District Court
on August 21, 2012 (Docket No. 110) . . . . . . . . . . . . . . . . . . . . . . . . . 20

318278.1 3/17/2014

# United States Court of Appeals
## For the First Circuit

No. 13-2203

———————

IN RE:  BIOLTEC AG, ET AL.,

Petitioners.

———————

Before

Howard, Thompson and Kayatta,
<u>Circuit Judges</u>.

———————

JUDGMENT

Entered:  November 18, 2013

Petitioners seek an order from this court requiring the district judge to recuse himself from further participation in this case. The basis for the recusal request is that the judge expressed entirely understandable dismay that petitioners violated a preliminary injunction which had previously been upheld by this court and then attempted to justify their behavior by arguing, in part, that their actions did not violate the underlying purpose of the injunction. We have reviewed the petition for writ of mandamus and conclude that it is entirely without merit. Petitioners have not remotely made the requisite showing of clear entitlement to the relief they seek and irreparable harm in the absence of such relief. <u>See</u> <u>In re United States</u>, 158 F.3d 26, 30 (1st Cir. 1998). Consequently, the petition is summarily denied.

By the Court:
<u>/s/ Margaret Carter, Clerk</u>.

cc:
Michael Callan
Katharine Costello
Edward Griffith
William Reynolds
Colm Ryan
Erika Browne
Peter Reiser

ADDENDUM000001

## STATEMENT OF THE CASE

This is an appeal of the district court's September 13, 2012 Preliminary Injunction and related orders.  The injunction broadly freezes all assets of all four defendants (subject to an ordinary-course-of-business carve out) and restrains defendant Biolitec AG from completing a downstream merger to relocate its corporate domicile from German to Austria pending resolution of this state law civil action seeking money damages only.  ADD-003.  The defendants are:

(i)    Biolitec AG, a public German company listed on the Frankfurt stock exchange and the ultimate parent of a global group of affiliated companies (the "Biolitec Group"), JA-406 (¶1) JA-536-537 (¶¶2, 6);

(ii)   Biolitec, Inc., one of Biolitec AG's U.S. affiliates against which ADI has obtained a $23 million judgment, currently on appeal, in a separate breach of contract action in New York.  JA-57, ADD-021;

(iii)  Biomed Technology Holdings, Ltd. ("BioMed"), a Malaysian holding company that is the majority owner of Biolitec AG, JA-29 (¶¶7, 9); and

(iv)   Dr. Wolfgang Neuberger, an Austrian citizen and resident of Dubai who is the founder of the Biolitec Group, the 100% owner of BioMed and the Chief Executive Officer of both Biolitec AG and Biolitec, Inc., JA-208 (¶10), JA-428 (¶1).

In January 2008, ADI commenced a breach of contract action against Biolitec, Inc. in the United States District Court for the Northern District of New York, *AngioDynamics, Inc. v. Biolitec, Inc.*, NDNY Docket No. 08-cv-4

4

(LEK/RFT) (the "NY Action"). JA-57. In October 2009, ADI commenced this action, which seeks to disregard Biolitec, Inc.'s corporate entity and to impose liability for ADI's alleged contract damages on Biolitec AG, BioMed and Dr. Neuberger based, *inter alia*, on fraudulent transfer and veil piercing theories. JA-52-54 (¶¶146-158). ADI's damages in this action consist entirely of its alleged breach of contract damages sought in the NY Action. *Id*.[2]

ADI's stated purpose in seeking the injunction, and the district court's rationale for issuing it, is to prevent Biolitec AG from completing a downstream merger with an Austrian subsidiary that would relocated Biolitec AG's corporate domicile to Austria. ADD-007 at 90:3-5. The district court acknowledged that restraining the merger would cause "not insignificant" harm to Biolitec AG. *Id*. at 91:6. The district court found that Biolitec AG's relocation to Austria would cause irreparable harm to ADI, however, because U.S. judgments are generally unenforceable in Austria. The district court determined, without analysis of German law, that "there is some chance of enforcing this court's judgment in Germany." ADD-039. ADI did not assert, and the district court did not find, any other irreparable harm. ADD-010-41.

---

[2] For that reason, this action will become moot if ADI's NY Action is dismissed on summary judgment, which Biolitec, Inc. seeks in its pending appeal of the New York judgment.

2. **Biolitec AG's Planned Merger and Relocation to Austria.**

In the fall of 2011, Biolitec AG's Supervisory Board and its CEO, Dr. Neuberger, started implementing a general corporate restructuring, including relocating Biolitec AG's headquarters and corporate domicile from Germany to Austria.  JA-406-07 (¶2) (Declaration of Chairman of Biolitec AG's Supervisory Board).[3]

The purposes of the relocation to Austria are:

a.      To take advantage of Austria's lower taxes, more favorable corporate laws, more flexible labor laws and available incentives for research and development and other local investment.  JA-407 (¶2.a); JA-414-5; JA-423-424; JA-425-27.

b.      To move the company's headquarters closer to Eastern Europe in order to capitalize on the company's significant sales growth in that region and to establish a strong foothold in a region that is expected to become a major source of revenue for the company. JA-407 (¶2.b); JA-428-29; JA-419-22.

---

[3] German public companies, such as Biolitec AG, have two boards of directors, a Supervisory Board and an Executive Board of Management.  The purpose of this two-tier board is to protect shareholders through an Supervisory Board that is independent of the company's day-to-day management.  JA-409-10 (¶¶8-12).

8

over the three business days permitted by the district court's expedited briefing

schedule.  JA-465 (¶¶6-7).

At 4:57 pm EDT on August 29, 2012 – less than 12 hours before the

shareholder meeting was scheduled to begin -- the district court issued the TRO

essentially in the form proposed by ADI.  JA-463 (¶2).  During a telephone call

with Biolitec's German legal advisors at 3:30 am EDT on August 30, 2012,

Biolitec's U.S. lawyers learned that Biolitec would retain full control to stop the

merger even after the shareholders voted to approve the merger.  *Id.*

The TRO enjoins the defendants from exchanging or otherwise transferring

"any ownership interest it holds in any other defendant."  ADD-002.  Since the

vote would not result in such an exchange and Biolitec would retain control to stop

the merger, the vote proceeded without violating the terms of the TRO.  By

proceeding with the shareholder vote, Biolitec was able to forestall incurring the

substantial irreparable damages that Biolitec AG will incur if the merger approval

process is terminated.  JA-466 (¶10).

### B.    ADI's Underlying Breach of Contract Dispute with Biolitec, Inc.

#### 1.    The Supply and Distribution Agreement.

On April 1, 2002, ADI and Biolitec, Inc. entered into a Supply and

Distribution Agreement (the "SDA").  JA-58 (¶10).  Pursuant to the SDA, Biolitec,

Inc. agreed to supply ADI with three medical products.  JA-079 (Schedule A).

11

ADDENDUM000005

UNITED STATES COURT OF APPEALS
FIRST CIRCUIT

| | |
|---|---|
| ANGIODYNAMICS, INC., | |
| Appellee/Plaintiff | |
| vs. | Docket No. 12-2044 |
| BIOLITEC, INC., BIOLITEC AG, BIOMED TECHNOLOGY HOLDINGS LTD. and WOLFGANG NEUBERGER, | |
| Appellants/Defendants | |

**DEFENDANTS' MOTION TO VACATE TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION (Fed. R. App. P. 27(b).)**

Now come the Defendants, Biolitec, Inc., Biolitec AG, Biomed Technology Holdings,

Ltd., and Wolfgang Neuberger (collectively "Biolitec"), having appealed pursuant to of 28 U.S.C.

§§ 1292(a)(1) and 2349(a) and move this Court on an emergency expedited basis for a stay or

to vacate the Temporary Restraining Order entered by the United States District Court for the

District of Massachusetts on August 29, 2012 in the matter of AngioDynamics, Inc. v. Biolitec,

Inc., et al, United States District Court for the District of Massachusetts, Western Division, C.A.

No. 3:09-cv-30181-MAP.  Biolitec requests an emergency hearing, either in person or by

telephone, on this matter on August 29, 2012 at any convenient time, inasmuch as the

Temporary Restraining Order restrains a corporate shareholder meeting scheduled to occur at

4:30 a.m., August 30, 2012, Eastern Standard Time.  A copy of the Court's Temporary

Restraining Order is attached as Exhibit A.

Biolitec has complied with the provisions of Fed. R. App. P. 27(b) inasmuch as the

Clerk's Office was alerted to the potential for this filing at 1:15 p.m. on August 29, 2012.

By way of further support, Biolitec incorporates the arguments advanced by Biolitec in

the opposition papers and Declarations submitted to the District Court.  See ECF Nos. 118, 119

and 125 with attachments.

518296.1

ADDENDUM000006

# United States Court of Appeals
## For the First Circuit

———————————————

No. 12-2044

ANGIODYNAMICS, INC.

Plaintiff - Appellee

v.

BIOLITEC AG; WOLFGANG NEUBERGER; BIOLITEC, INC.;
BIOMED TECHNOLOGY HOLDINGS, LTD.

Defendants - Appellants

———————————————

### ORDER OF COURT

Entered: August 29, 2012

Defendants' motion to vacate the district court's August 29, 2012, temporary restraining order is denied.

<u>So ordered</u>.

By the Court:

<u>/s/ Margaret Carter, Clerk</u>

cc:
Erika C. Browne
Michael K. Callan
Paul A. Feigenbaum
Edward Griffith
William Edward Reynolds
Colm P. Ryan

## PRELIMINARY STATEMENT

This is an appeal of the district court's September 13, 2012 Preliminary

Injunction (Exhibit 1), and related orders (Exhibits 2-4), including the district

court's December 14, 2012 Memorandum and Order denying defendants' Rule

59(e) motion for reconsideration (Exhibit 4).  The Preliminary Injunction (i)

broadly freezes all assets of all four defendants (collectively, "Biolitec"), subject to

an ordinary-course-of-business carve out; and (ii) restrains defendant Biolitec AG

from completing a downstream merger that will result in relocation of its corporate

domicile from German to Austria.  Exhibit 1 at 2.

On January 10, 2013, Biolitec perfected this appeal by filing its brief, which

asserts that the Preliminary Injunction should be vacated for three independent

reasons:

> (i)  the district court lacked authority to issue preliminary
> injunctive relief in this civil action seeking money
> damages only, Appellants' Brief at 25-35 (Argument
> Point II);
>
> (ii)  plaintiff AngioDynamics, Inc. ("ADI") will not suffer
> irreparable harm in the absence of the injunction, *id*. at
> 35-49 (Argument Point III); and
>
> (iii)  ADI failed to establish likelihood of success, *id*. at 49-
> 62 (Argument Point IV).

This motion seeks, pursuant to Fed.R.Civ.P. 8(a)(2), modification of the

Preliminary Injunction to allow Biolitec AG's downstream merger to be completed

ADDENDUM000008

*Autoskill Inc. v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1498 (10th Cir.1993)).
*See generally Hilton v. Braunskill*, 481 U.S. 770, 776, (1987) (discussing factors
for issuance of relief under Rule 8(a)). *Accord Latino Political Action Committee
v. City of Boston*, 716 F.2d 68, 69 (1st Cir. 1983) (one of the factors to be
considered on a Rule 8(a) motion is whether the appellant is likely to succeed on
the merits of the appeal).

Biolitec asserts that this appeal is likely to result in the dissolution of the
Preliminary Injunction in its entirety for three independent reasons:  (i) the district
court lacked authority to issue preliminary injunctive, Appellants' Brief at 25-35
(Argument Point II); (ii) ADI failed to establish irreparable harm in the absence of
the injunction, *id*. at 35-49 (Argument Point III); and (iii) ADI failed to establish
likelihood of success, *id*. at 49-62 (Argument Point IV).

It is not necessary for the Court to decide any of those substantive issues,
however, in order to grant the limited relief sought by this motion.  This motion
does not seek to stay or lift the Preliminary Injunction in its entirety.  On the
contrary, this motion seeks only to modify the Preliminary Injunction to permit
Biolitec AG to complete its downstream merger and thereby relocate its corporate
domicile to Austria.  The merger will not result in moving any of Biolitec AG's
assets from Germany to Austria and will not prevent ADI from commencing an
enforcement action against Biolitec AG in Germany.  As set forth below, the

12

ADDENDUM000009

# United States Court of Appeals
## For the First Circuit

No. 12-2044

ANGIODYNAMICS, INC.,

Plaintiff, Appellee,

v.

BIOLITEC AG, ET AL.,

Defendants, Appellants.

---

**ORDER OF COURT**

Entered:  February 4, 2013

Defendants-appellants seek an order modifying the district court's September 13, 2012, preliminary injunction to enable them to complete a previously commenced corporate merger. After review of the record and the parties' submissions, defendants' motion is denied. Briefing will continue on the present schedule and oral argument, if warranted, will be scheduled in the ordinary course.

By the Court:

<u>/s/ Margaret Carter, Clerk</u>.

cc:
William Edward Reynolds
Colm P. Ryan
Michael K. Callan
Erika C.  Browne
Edward Griffith

30, 2012, the one-month-period expires on September 29, 2012.  Because September 29, 2012 is a Saturday, however, the deadline for filing objections is extended to Monday, October 1, 2012.

8.      Even if such objections are filed, the merger may still be finalized and become effective before such objections are resolved.

9.      The merger can never become effective, however, until the Company's Executive Board of Management, which currently consists of Dr. Wolfgang Neuberger, executes, and has notarized, a formal Notice of Merger that is then filed with the German commercial register (*Handelsregister*).  That has not yet taken place and, until it does, the merger cannot be finalized or become effective.

10.     Although the Notice of Merger may be executed and filed with the commercial register before the one-month objection period expires, many companies wait for that period to expire before filing the Notice of Merger.  The Company's Executive Board of Management is under no legal obligation to execute and file the Notice of Merger in this case prior to the October 1, 2012 expiration of the one-month objection period, especially in light of the Preliminary Injunction Order.

11.     Accordingly, the merger cannot become effective until the Notice of Merger is executed and filed.  The Company's Executive Board of Management may wait until early October before doing so without violating its obligations under German law or risking other negative consequences.  Provided that the Notice of Merger is not executed or filed prior to early October, defendants would be able to stop the merger from being finalized at that time should this Court deny defendants' motion for reconsideration of the Preliminary Injunction Order.

12.     If defendants stop the merger before the motion for reconsideration is resolved, however, they will not be able to "re-start" the merger even if this Court grants the motion and dissolves the Preliminary Injunction.  On the contrary, once this merger is stopped, defendants

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS – WESTERN DIVISION

**C.A. No. 09-cv-30181-MAP**

| |
|---|
| ANGIODYNAMICS, INC., |
| Plaintiff, |
| vs. |
| BIOLITEC, INC., BIOLITEC AG, BIOMED TECHNOLOGY HOLDINGS LTD. and WOLFGANG NEUBERGER, |
| Defendants |

## DECLARATION OF EDWARD GRIFFITH

EDWARD GRIFFITH declares pursuant to 28 U.S.C. § 1746 as follows:

1.      I am counsel to defendants Biolitec Inc., Biolitec AG, BioMed Technology Holdings Ltd. and Wolfgang Neuberger.  I make this declaration to advise the Court as to the latest timing issues of Biolitec AG's planned cross-border merger, which will result in the relocation of Biolitec AG's corporate domicile and headquarters from Jena, Germany to Vienna, Austria (the "Planned Merger").

2.      As the Court is aware, Biolitec AG has not taken the steps necessary to complete the Planned Merger in order to comply with the September 13, 2012 Preliminary Injunction Order.  Biolitec AG's Austrian counsel recently advised, however, that an application for registration of the merger must be filed with the competent Austrian court, the Commercial Court of Vienna, on December 31, 2012.  That filing deadline is explained in detail in the declaration of Biolitec AG's Austrian counsel, Dr. Thomas Trettnak, executed today, December 3, 2012 and annexed hereto as Exhibit A.  English translations of the relevant European Union and Austrian statutes are annexed to the Trettnak Declaration as Exhibits 2 and 3.

1

savings retroactively to March 31, 2012, provided that the Planned Merger is eventually

approved and completed.  If the competent Austrian court rejects the application for registration

of the Planned Merger because the Preliminary Injunction prevents **biolitec AG** from taking

necessary action by March 1, 2013, however, **biolitec AG** would forever lose those retroactive

savings and could obtain tax and regularly compliance cost savings prospectively only in the

event that a new merger process is commenced and approved..

6.      If the Planned Merger is not completed, there is no guarantee that a new merger

process could be completed.  Starting a new merger process would require scheduling another

shareholders vote to approve the merger and all dissenting shareholders would be given the

option of selling their shares to the company.  When the shareholders voted to approve the

Planned Merger on August 30, 2012, **biolitec AG's** share price was at an historic low.  The buy-

back of dissenting shares therefore did not present a significant obstacle.  If the share price

increases before another shareholder vote is taken, however, the cost of the dissenting share buy-

back may present an insurmountable obstacle to completing the merger.

7.      Accordingly, unless the Preliminary Injunction is lifted by March 1, 2013, the

Preliminary Injunction will prevent the Planned Merger from being completed and thereby cause

**biolitec AG** to incur substantial financial loses and, possibly, irreparable harm if a new merger

process cannot be completed in the future.  For these reasons, **biolitec AG** requests that this

appeal be expedited so that a decision may be issued no later than March 1, 2013 or,

alternatively, that the Preliminary Injunction be modified by March 1, 2013 to allow **biolitec AG**

to complete the Planned Merger.

Preliminary Injunction for further proceedings before this Court. This procedure will avoid

further litigation of the pending appeal.

> **III.     EMERGENCY TREATMENT IS WARRANTED IN LIGHT OF**
> **THE AUSTRIAN COURT'S MARCH 1, 2013 FILING**
> **DEADLINE.**

21.     As previously reported to this Court, Biolitec has taken every step possible to

delay completion of the current merger process while keeping that process alive in the event the

Preliminary Injunction is modified or vacated to allow the merger to be completed. *See, e.g.,*

Declaration of Biolitec counsel, Edward Griffith, executed December 3, 2012 (ECF No. 179);

Declaration of Biolitec AG's Austrian counsel, Dr. Thomas Trettnak, executed on December 3,

2012 (ECF No. 179-1) (the "December 3 Trettnak Dec."). Biolitec cannot delay completion of

the merger indefinitely, however, and the competent Austrian court, the Commercial Court of

Vienna, has established March 1, 2013 as the deadline for Biolitec AG to complete its

application to register the merger in Austria. *See* Declaration of Dr. Trettnak executed on

January 8, 2013 (Exhibit 5) (the "January 8 Trettnak Dec.") at ¶¶ 3-12; January 17, 2013

Decision of the Commercial Court of Vienna (Exhibit 6) (extending filing deadline until March

1, 2013). Once that application is completed, the Commercial Court of Vienna may approve the

application, which would complete the merger, usually within two weeks. December 3 Trettnak

Dec. (ECF No. 179-1) at ¶ 9.

22.     The current March 1, 2013 deadline represents a one month extension over the

prior deadline of February 1, 2013 set by the Commercial Court of Vienna. January 8 Trettnak

Dec. (Exhibit 5) at ¶ 11. The circumstances of how this one month extension came about

underscore the fact that the Preliminary Injunction is not necessary to preserve Germany as a

jurisdiction where ADI may seek enforcement of a potential judgment in this action. The

application for registration of the merger in Austria cannot be completed until the German court

9



# Ad-hoc News

27.03.2012

## biolitec AG: Downstream Merger with Relocation to Austria in planning

Jena, March 27, 2012 – Jena-based biolitec AG, listed in Prime Standard segment of Frankfurt Stock Exchange (ISIN DE0005213409), wants to transfer its company domicile to Austria.

To combine the relocation to Vienna with the already announced transfer to Entry Standard segment, major shareholder BioMed Technology Investment Holding has announced to vote for a downstream merger into biolitec AG's Austrian subsidiary at the occasion of the next general assembly of biolitec AG.

Biomed Technology Investment Holding owns slightly over 75% of biolitec AG's shares, following the recent completion of a share buy back program. Therefore, the acceptance of a respective decision proposal is guaranteed. The relocation to Austria and the concomitant downstream merger to Entry Standard will allow biolitec AG to take advantage of tax optimization options, e.g. the use of Austria's favourable group taxation rules, and also bring biolitec AG closer to the growing future markets in Eastern Europe and Russia.

In the course of the merger to the new value in Entry Standard, biolitec shares will be exchanged into new shares to maintain continuous trading for the shareholders in the quality segment Entry Standard of the Frankfurt Stock Exchange.

The listing in Entry Standard of Frankfurt Stock Exchange is less demanding from a regulatory effort and thus saves cost for the company. In the merging of biolitec AG into the new Entry Standard-value, shares can customarily be traded continuously without retardation.

As this process has some incalculable elements, we precautionary want to inform the shareholders that it is possible that a suspension of the trading of biolitec shares is a possibility. In the shareholders interest, biolitec will however endeavour to keep this suspension period as short as possible.

<u><- Back to: Ad-hoc-News</u>

Copyright © 2012  biolitec AG
Products manufactured by
CeramOptec GmbH, Bonn
All rights reserved.

ADDENDUM000015

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS – WESTERN DIVISION

|  | C.A. No. 09-cv-30181-MAP |
|---|---|

ANGIODYNAMICS, INC.,

               Plaintiff,

vs.

BIOLITEC, INC., BIOLITEC AG, BIOMED
TECHNOLOGY HOLDINGS LTD. and
WOLFGANG NEUBERGER,

               Defendants

## MEMORANDUM OF LAW IN
## SUPPORT OF EMERGENCY MOTION FOR
## RECONSIDERATION OF PRELIMINARY INJUNCTION ORDER

Defendants Biolitec, Inc., Biolitec AG, BioMed Technology Holdings Ltd. and Wolfgang

Neuberger submit this memorandum of law in support of their emergency motion for

reconsideration of the Preliminary Injunction Order issued on September 13, 2012.

### Preliminary Statement

At the conclusion of the September 13, 2012 oral argument on plaintiff's emergency

motion for injunctive relief, the Court issued ADI's proposed Preliminary Injunction Order [ECF

141] without prejudice to defendants filing a motion for reconsideration and a request for an

evidentiary hearing.  *See* Tr. September 13, 2012 Hearing [ECF 142] ("Tr.") at 89:25 – 90:2 and

98:22 – 24.  The Preliminary Injunction Order restrains defendants from, *inter alia*, completing

the planned relocation of the corporate domicile of Biolitec AG (the "Company") from Germany

to Austria.

The Court stated that its "primary reason for allowing the motion" was its determination

that plaintiff AngioDynamics, Inc. ("ADI") had made a strong showing of irreparable harm since

1

the Preliminary Injunction arguably benefits the Debtor (which it does not), the Preliminary Injunction should be reversed if it was issued in error, which Biolitec submits has been established by its brief and the completed briefing on the Rule 8 motion.

By pressing its meritless argument to stay this appeal, however, ADI has nevertheless kept the stay in place for another week – a significant period of time when there are only four weeks remaining before the March 1, 2013 deadline established by the Commercial Court of Vienna for Biolitec AG's completion of its application to register the merger in Austria.

Finally, ADI mistakenly asserts that Biolitec's representation to the bankruptcy court that the "sole reason for the injunction was to prevent Biolitec AG from moving, not assets, but moving its corporate domicile from Germany to Austria" is inconsistent with Biolitec's characterization of the relief sought by its Rule 8 motion as "limited." *See* ADI's January 31, 2013 Response at 4 n.3. Biolitec's brief and Rule 8 motion papers are premised on the undisputed fact that the stated purpose of the injunction is to prevent Biolitec AG from relocating its corporate domicile from Germany to Austria in order to preserve Germany as a possible jurisdiction where ADI may seek to enforce a potential judgment. *See*, *e.g.*, Rule 8 motion at 14.

**ADDENDUM000017**

Case: 13-1626    Document: 00116636365    Page: 242    Date Filed: 01/08/2014    Entry ID: 5808511
Case 3:09-cv-30181-MAP Document 142    Filed 09/17/12    Page 94 of 103

94

```
 1        I'll be happy to reconsider it.  But right now I believe
 2    the plaintiff has prevailed perhaps by a somewhat slimmer
 3    margin on the issue of likelihood of success on the merits
 4    than it has on the issue of balance of harm and on the
 5    issue of irreparable harm but sill sufficiently to justify
 6    issuance of the injunction.
 7        Now, that takes me back to my original concern.  I'm
 8    prepared to simply reaffirm the temporary restraining
 9    order issued by Judge Zobel at the end of August, and I'm
10    also prepared to modify that order to make my intent
11    clear.
12        I am very concerned that the vote has taken place.  I
13    am very concerned that the merger may only be a whisker
14    away based upon steps that the German or Austrian courts
15    might take that I have no control over, the plaintiff has
16    no control over.  I'm not even sure that the defendant has
17    any control over it at this point and a purely ministerial
18    act of entering the merger in the registry of the books.
19        I have decided that the merger should not take place,
20    and I expect that that order will be adhered to.  I want
21    to make sure that there is nothing in the language of the
22    order that I issue that presents any ambiguity on that
23    point.
24        We've already had a situation where perhaps there's
25    been an ambiguity.  I don't know.  I want the order to be
```

corporate books, which included the stock certificates of BAG, in his office in East

Longmeadow, MA, from 2009 to the present:

> Q. . . . [A]re you responsible for sort of maintaining the stock certificates of Biolitec, Inc.?
> A. The corporate books have ended to be residing in my office space.
> Q. And how long have they been residing in your office space?
> A. From before 2009.
> Q. To the present?
> A. Yes.
>
>       *        *        *
>
> Q. Okay. So . . . the corporate books have been in your office from spring of 2009 to the present?
> A. I believe so, yes.
> Q. Okay. And do you keep all the stock certificates for Biolitec, Inc. in those books?
> A. I – I don't recall at the moment.
> Q. Okay. But you kept the stock certificate showing Biolitec AG's ownership of Biolitec, Inc. –
> A. That was there, yes.

Reynolds Dec. Ex. E at 176-178.[4]  Thus, by Appellants' own admission, BAG had

assets in the U.S., and the District Court's exercise of jurisdiction over BAG was

plainly proper under German law, thus ensuring easy recognition and enforcement

of a judgment of the District Court in Germany.

---

[4] As noted above, BAG transferred its shares in BI to another subsidiary in December 2011.  JA-251.  However, for purposes of German law, "the time at which the defendant's assets need to be present in the forum state is the time of initiation of the lawsuit."  JA-1080.  It is conceded that BAG owned BI for two years after the lawsuit was initiated in October 2009 (*see* JA-226), and Skutnik's testimony establishes conclusively that the share certificates were in East Longmeadow, MA during that entire period.

10

294584.12 1/22/2013

4.      In addition to my position with CeramOptec GmbH, I was head of research and development and Chief Scientific Officer at Biolitec AG from March 1999 through March 2009.

5.      From 1999 until 2009, I was a member of the executive board of management of Biolitec AG, and for a number of years in that period I was the only member of that board other than Wolfgang Neuberger.  After Neuberger removed me from the board, he became its only member.

6.      In addition, I own 50,600 shares (slightly less than 0.5% of the total stock) of Biolitec AG.

7.      Because of my long-time experience as an employee and manager in the biolitec group, I know Wolfgang Neuberger very well.  I worked closely with him for over 15 years.

8.      Neuberger removed me from the board of Biolitec AG, and later removed me as an employee of the Biolitec group, as part of a trend of eliminating other individuals within the organization that might have the experience or willingness to question his decisions.

**Neuberger's Deliberate Evasion of Service**

9.      On March 3, 2011, I attended the Biolitec AG shareholders' meeting in Jena, Germany.  Wolfgang Neuberger was present and intended to lead the meeting, as usual, in his capacity as President, CEO, and Chairman of the Management Board, as well as the owner of approximately 75% of the stock of Biolitec AG through his holding company Biomed Technology Holdings, Ltd.

10.     However, a receptionist came into the office to inform us that local bailiffs were outside asking to serve papers on Neuberger.  Neuberger then turned to me and told me to take over the annual company speech.  He slipped out a back door to evade the bailiffs.

2

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

ANGIODYNAMICS, INC.,

                            Plaintiff-Appellee,

                                                            Nos. 13-1626,
                    v.                                      13-2179

BIOLITEC AG, BIOMED TECHNOLOGY
HOLDINGS LTD. AND WOLFGANG
NEUBERGER,

                            Defendants-Appellants.

_____


## <u>CERTIFICATE OF SERVICE</u>

In compliance with this Court's Rule 4 Governing Electronic Filing, I

hereby certify that on March 17, 2014, I electronically filed the foregoing

Appellee's Brief with the Clerk of the Court using the CM/ECF system and that

copies were transmitted via ECF to the following counsel of record for Appellants:

**Michael K. Callan**
Doherty, Wallace, Pillsbury & Murphy, P.C.
One Monarch Place, 19th Floor
1414 Main Street
Springfield, MA 01144-1002
(413) 733-3111
Fax: 413-734-3910
Email: mcallan@dwpm.com

**Edward Griffith**
THE GRIFFITH FIRM
45 Broadway, Suite 2200
New York, New York 10006
(212) 363-3784
Email: eg@thegriffithfirm.com

_s/ William E. Reynolds_
William E. Reynolds

2

294641.5 3/17/2014